### Harold Priess, Appellant, v. Acme Mosaic Terrazzo Company, Inc., Appellee.

### Gen. No. 41,534.

Opinion filed April 14, 1941.

DAVID H. CAPLOW, of Chicago, for appellant; ERWIN M. PEARL, of Chicago, of counsel.

No appearance for appellee.

Mr. Justice Matchett delivered the opinion of the court.

Plaintiff sued in mandamus to compel the transfer of 68 shares of stock to him on the books of the defendant corporation. Defendant answered the complaint and amendments of it. Plaintiff filed a replication. There was a trial by the court on stipulation of facts and evidence with a finding for defendant. The suit was dismissed and plaintiff appeals. Defendant has not appeared in this court to support the judgment.

Defendant is an Illinois corporation. October 19, 1928, the corporation (acting through its president and secretary) issued in the name of Wendell R. Clark certificates Nos. 33 and 36 for 34 shares each of the capital stock of the corporation. Each certificate states that the stock represented by it is "fully paid and non-assessable transferable only on the books of this corporation in person or by attorney upon the surrender of this certificate properly endorsed." The certificates are each indorsed on the back by Wendell R. Clark to plaintiff, Harold Priess.

By deposition O. E. Quinton testified that October 19, 1928, Genuvino Di Mayo and Albert Narduzzo (who issued the certificates) were respectively president and secretary of the defendant corporation; that Wendell R. Clark was a friend of Quinton, who was vice president of the Harbor State Bank; that Quinton performed services for the defendant corporation in consideration of which these certificates of stock, at the request of Quinton, were issued to Clark as his nominee; that November 2, 1928, Clark indorsed the stock certificates (his signature being witnessed by Florence Kollock) and delivered them to David H. Caplow, to whom Quinton was indebted; that Caplow was indebted to plaintiff, Harold Priess, who was associated with him in the practice of the law, and in consideration of what he owed the stock was delivered, so indorsed, to plaintiff Priess. Clark did not pay anything for the

shares. He was the nominee of Quinton. Quinton says he (Quinton) was the real owner and the only consideration for the issue of the stock in the name of Clark was services rendered by Quinton to defendant. Quinton says he would have caused the stock to be transferred to any other person if Caplow had requested.

The defense set up in the answer was that the stock was not sold to Quinton but issued at his request to Clark, a fictitious person, in order that it might be held by Quinton until a loan which defendant obtained from a bank should be paid, and when this loan was paid the certificates were to be returned; that the loan was paid and defendant asked Quinton to return the stock; that Quinton represented he had misplaced or lost it but promised to search and return when found; that the stock was never returned to defendant and September 1, 1933, by resolution of the stockholders and directors, the certificates were canceled; that defendant heard nothing more about the lost certificates until the latter part of 1934, when an attorney representing plaintiff demanded in his behalf the transfer of the stock to plaintiff's name which was refused.

The answer denied plaintiff is a bona fide transferee of the certificates for value, but on the contrary asserts that he conspired with Quinton to obtain the stock by fraud; that the issuance of the certificates was without consideration and not used in furtherance of any loan but wrongfully used by Quinton in violation of his pledge for his own personal use, which was a fraud and contrary to public policy and the laws of Illinois with reference to banks.

There was evidence on the hearing of the issuance of the certificates at Quinton's request and upon promises made by him as set up in the answer; that he informed defendant the certificates had been lost or misplaced (which Quinton denies) and that at a meeting of the stockholders and directors held in 1933, a reso-

lution was passed directing these certificates to be canceled and others issued therefor and declaring the original issue of the certificates illegal and void. There is no evidence tending to show that Caplow or Clark at any time had notice of defendant's equities, and as already stated defendant has not appeared in this court.

Section 1 of the Uniform Stock Transfer Act (Ill. Rev. Stat. 1939, ch. 32, par. 416, p. 911 [Jones Ill. Stats. Ann. 32.195]) provides:

"Title to a certificate and to the shares represented thereby can be transferred only: (a) By delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or ..."

Section 15 of the same act (p. 912, par. 430) provides:

"There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

There was nothing on the face of either of these certificates tending to show that the person in whose name the certificates issued was not the owner. On the contrary the certificates expressly state that he is such owner and the stock is fully paid. There is no evidence tending to show plaintiff took the stock with notice of any facts indicating a defect in Clark's title. There is no proof of conspiracy as alleged.

In *United States Gypsum Co. v. Faroll,* 296 Ill. App. 47, at p. 55, this court said:

"Even though only the bare custody of the stock certificate be intrusted to another who, in complete breach of his duty, disposes of them to an innocent purchaser, the title of the original owner is lost, and

that, too, though this custody was obtained by deceit and fraudulent representations.''

The Uniform Transfer Act makes certificates of stock negotiable. Fletcher's Cyclopedia Corporations, vol. 12, §§ 5478, 5479.

We hold plaintiff was entitled to a mandamus to compel the transfer of this stock to his name on the books of the corporation. The judgment will be reversed and the cause remanded with directions the writ issue.

*Reversed and remanded with directions.*

O'Connor, P. J., and McSurely, J., concur.