STATE EX REL. NORTH AMERICAN COMPANY, a Corporation, Relator, v. HONORABLE WILLIAM K. KOERNER, Judge of the Circuit Court, City of St. Louis, Missouri.—Nos. 40643, 40644, 40645.—211 S. W. (2d) 698.

Court en Banc, April 12, 1948.

Rehearing Denied, May 27, 1948.

*Frank Y. Gladney, J. C. Jones, Jr., Lon O. Hocker, Fred L. Williams* and *Roland F. O'Bryen* for relator; *Jones, Hocker, Gladney & Grand* and *Williams, O'Bryen & Schlafy* of counsel.

*Sebastian C. Pugliese, Paul Dillon* and *Claude O. Pearcy* for respondent.

914

[699] DOUGLAS, J.—The North American Company, a New Jersey corporation, the relator in these prohibition proceedings, is seeking a determination of the question whether the long existing section of our statutes permitting the attachment of 'shares of stock in a Missouri corporation by serving the writ on an official of the corporation at the office of the corporation was rendered ineffective by the adoption in 1943 of the Uniform Stock Transfer Act. (Laws 1943, pp. 495-502, Sec. 5563.1-Sec. 5563.24 Mo. R. S. A.)

Relator's theory is that the Uniform Stock Transfer Act has changed the old doctrine that a certificate of stock is merely evidence of the holder's property interest in the corporation with its situs in the state of the corporation's domicile, and that under the act the entire property interest is now embodied in the certificate, like a bearer bond for instance, so that the situs of the holder's property interest is necessarily the same as the situs of the certificate. We issued writs of prohibition to determine the question as it bears directly on the jurisdiction of the Circuit Court of the City of St. Louis over relator, a non-resident corporation, as defendant in three cases pending there where jurisdiction was obtained by attaching relator's stock in the Union Electric Company, a Missouri corporation with its principal office in the City of St. Louis.

The question arises under these circumstances. One Frank J. Boehm as plaintiff, filed three actions in the Circuit Court of the City of St. Louis against relator and [700] others, in which he alleged a conspiracy to defame, libel and slander, and he also alleged malicious prosecution. He seeks damages aggregating $24,500,000. Relator, as we said, is a New Jersey corporation, having its principal office in New York City. Boehm sought to obtain jurisdiction over relator in each of the three actions by attaching relator's shares of stock in the Union Electric Company by serving writs on the secretary of the Union Electric Company at its office in St. Louis as provided by statute.

The attachment levies followed the procedure prescribed by Sections 1345, 1346, and 1457, R. S. 1939, Mo. R. S. A. which authorize such an attachment at the office of the corporation without actual seizure of the stock certificates themselves. The certificates which

have been issued to relator are presumably in a vault in New York City but, at any rate, were not seized by the sheriff.

Relator, making special appearances, moved to quash the sheriff's returns. The grounds stated in the motions are lengthy, but may be resolved into the single issue whether the stock had a situs in Missouri so that jurisdiction of the circuit court could be obtained by attachment without violating relator's right to due process under the Fourteenth Amendment. In substance, relator argues that since the adoption of the Uniform Stock Transfer Act in this state stock certificates of themselves constitute the shares of stock and embody the holder's whole property interest in the corporation, and are tangible, negotiable instruments having a situs only in the jurisdiction where the stock certificates are actually located. Therefore, relator concludes the statutes under which the attachments were made have been either repealed by the Transfer Act or have become ineffective because such shares no longer have a situs in Missouri which could subject them to attachment here.

When the trial judge overruled the motions to quash in each of the three actions, three separate prohibition proceedings were instituted in this court and have been consolidated for the purpose of argument and opinion.

■ Prior to the enactment of the Transfer Act, it was well settled in Missouri and elsewhere that the situs of shares of stock is in the state which is the domicile of the corporation, regardless of where the stock certificates may be located.

In 7 C. J. S., Attachment, Section 92(b), the general rule is stated: "It seems to be well settled that, for purposes of attachment, the situs of shares of stock is within the state where the corporation resides, and that they may lawfully be levied on in such state. Accordingly, the stock of a domestic corporation is subject to attachment in the state of its domicile, although it is owned by a nonresident, and although the certificate of stock is in the possession of a debtor outside of the state."

■ Section 1457 authorizing attachment of shares of stock has been in force in this state since 1860. Laws 1859, p. 3. In Armour Brothers Banking Company v. St. Louis National Bank, 113 Mo. 12, 20 S. W. 690, where it was held that stock certificates issued by a New York corporation could not be attached in Missouri under the same attachment statutes here involved, but such statutes applied to Missouri corporations alone, the opinion states that ". . . certificates of stock are not the stock itself—they are but evidence of the stock; . . ." and quotes with approval from Cook on Corporations, Section 485: "Shares of stock in a corporation are personal property, whose location is in that state where the corporation is created. . . . Considered as property separated from its owner, stock is in existence only in the state of the corporation."

In Richardson v. Busch, 198 Mo. 174, 95 S. W. 894 the public administrator of the City of St. Louis was held not entitled to administer upon stock certificates of a New York corporation which had been owned by a New York decedent but which were located in St. Louis, since the situs of the stock was in New York. The opinion quotes with approval from Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 44 L. Ed. 647, where the Supreme Court of the United States upheld the jurisdiction of the Federal Circuit Court for the Western District of [701] Michigan over stock in a Michigan corporation, although the owners of the stock and the holders of the certificates lived in Massachusetts, stating: ''The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner.'' And see the comment on the latter opinion by Judge Learned Hand in Direction Der Disconto-Gesellschaft v. U. S. Steel Corporation, 300 F. 741.

Relator, while conceding that the situs of the shares of stock was in Missouri prior to the adoption of the Transfer Act, contends that the nature of the property in shares of stock has been entirely changed by the Transfer Act; that the shares of stock are the certificate itself and have become tangible personal property; that stock certificates are negotiable instruments with a situs no longer at the domicile of the corporation but having a situs solely where the certificates themselves are located; that even though the Transfer Act expressly retains the right to attach under the old statutes, this provision of the act is so much in conflict with the remainder of the act that it must be disregarded.

On the contrary we agree with the views of the learned trial judge who in upholding the attachment in the three cases filed a memorandum opinion which states in part as follows: ''The act of 1943 does not change the substantive law with reference to the relationship between corporation and stockholder. It is still a contractual and trust relationship, an intangible; the certificate merely evidences it. This 1943 act purports to regulate the 'endorsement, transfer and delivery of shares of stock in corporations'; and it does just that, nothing more. If it were to be construed to alter the preexisting property rights of the stockholders it might be challenged on constitutional grounds. So far as this Court can discern, neither expressly nor by implication does the act do more than provide how stock may be transferred, both voluntarily and by legal procedure, and one of the methods which may legally be followed is set forth

in Section 13 (of the Act) reaffirming Sections 1345 and 1346, R. S. Mo. 1939.''

Section 13 of the proposed model Uniform Stock Transfer Act as recommended for adoption by the various states contains a provision requiring actual seizure of stock certificates as the method of attachment of shares of stock. That section provided in part: ''No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined . . . ''. The original bill embodying the Transfer Act as introduced in the legislature, contained this section as set out, but through a Senate Committee Amendment' Section 13 was entirely rewritten. Section 13 of the act as finally adopted commences as follows: ''In addition to the remedies provided by Section 1345 and 1346 and related sections of the Revised Statutes of Missouri 1939 providing for attachment or execution upon shares of stock . . . '' The section then goes on to authorize seizure of the stock certificate as an additional method of attachment, and contains lengthy provisions for adjusting disputed title claims and staying one proceeding where there have been attachments by both methods.

It is clear the legislature intended to preserve the former attachment jurisdiction of Missouri courts over shares of stock even though the sheriff did not or could not actually seize possession of the stock certificates, and to continue to permit title to stock to be transferred through judicial proceedings pursuant to such attachment. But relator asserts that this provision of Section 13 of the act is inconsistent with Section 1 which recites ''Title to a certificate and to the shares represented thereby, can be transferred only . . . '', and then follow three sub-paragraphs each of which involves actual delivery of the stock certificate. [702] While Section 13 appears to be in apparent conflict with the attempt to make the methods of transfer set out in Section 1 exclusive, still we regard the attachment procedure retained under Section 13 as an exception to Section 1. It might have been better draftsmanship if in rewriting Section 13 an amendment had been added to Section 1 by having it commence with the words ''Except as hereinafter provided in Section 13.'' But the intent of Section 13 is so clear that it must be held that attachment proceedings under the prior statutes were intended to constitute an additional method to those set out in Section 1, whereby shares of stock might be transferred.

Relator's brief discusses various paragraphs of the act which it contends converts a certificate of stock embodying the complete property interest of the holder into a negotiable instrument, and subject to the same rules as to situs that would be applicable under the Negotiable Instruments Act. The Transfer Act nowhere states that stock

certificates shall be considered as negotiable instruments. Clearly a stock certificate cannot comply with at least two requirements of the definition of a negotiable instrument contained in Section 3017 R. S. 1939, Mo. R. S. A. namely, the instrument "must contain an unconditional promise or order to pay a sum certain in money," and "must be payable on demand, or at a fixed and determinable future time." While the Transfer Act gives the stock certificate some elements of negotiability, it does not constitute the certificate a negotiable instrument within the meaning of the Negotiable Instruments Act.

There are some cases where stock certificates under the Uniform Stock Transfer Act have been held negotiable instruments. See: Turnbull v. Longacre Bank, 249 N. Y. 159, 163 N. E. 135; Edmund Wright-Ginsberg Co. v. Ribbon Mills (N. J.), 148 Atl. 178; Priess v. Terrazzo Co., 309 Ill. App. 475, 33 N. E. (2d) 504. We may assume without deciding that in the broad sense of the word, stock certificates under the Transfer Act as adopted in Missouri may be regarded as a type of instrument which is negotiable. But that does not mean that decisions applying to instruments coming within the scope of the Negotiable Instruments Act must also be applied to stock certificates. There is a substantial difference in the nature of the instruments. Checks, notes, drafts, and bills of exchange are intimately tied in with the monetary system of the country. Notes and other commercial paper are rediscounted by the Federal Reserve Banks in exchange for Federal Reserve notes which swell the monetary supply of the Nation. A large majority of all the obligations payable in money are discharged through a check or other form of commercial paper and not through the payment of currency. Such commercial paper freely passes from hand to hand as the equivalent of money and it is suitable that the law should give it a situs similar to that of currency. Another type of negotiable instrument, a bearer bond, freely changes hands like an ordinary chattel without even the formality of an endorsement, and may appropriately have a situs like that of a chattel.

However, a stock certificate has for many years been recognized as a different type of instrument. It is the tangible evidence of title to a unique type of intangible property having a situs at the domicile of the corporation. The legislature by passing the Transfer Act has made a stock certificate more freely transferable without changing the nature of the property right of the stockholder and without changing the situs of the property. This it had the right to do. The stock certificate remains a title document, not the property itself.

The title of the act as adopted, is as follows: "AN ACT to Regulate the Endorsement, Transfer and Delivery of Shares of Stock in Corporations, providing for the method of transferring title to shares, who may deliver certificates of stock, the method of endorsing certificates and the validity thereof, providing for rescission

of transfer of shares of stock, prescribing warranties in connection with stock transfers, prescribing requirements for the validity of attachment or liens upon shares of stock and creditors remedies in relation thereto, providing for the issuance of lost or destroyed [703] certificates of stock pursuant to order of court, and defining the terms herein contained." This title says nothing about changing the nature of property rights in stock or changing the situs of shares of stock. It is consistent with the opening part of Section 13 which evidences the intent of the legislature to retain the situs of shares of stock in Missouri.

There are other sections of the act which indicate a fundamental distinction between stock certificates and commercial paper. Section 3, for example, permits a corporation to treat the stockholder registered on its books as the owner of the shares for the purpose of the right to vote and to receive dividends, and for the purpose of imposing liability for calls and assessments, even though the stock certificate may have changed hands through endorsement and delivery.

Sections 3070 and 3072 R. S. 1939, Mo. R. S. A. protect the holder in due course of commercial paper even though a prior negotiation of the instrument has been obtained by "fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when" the prior negotiation is in breach of faith or under circumstances amounting to a fraud. Section 7 of the Transfer Act protects an innocent purchaser for value where the endorsement or delivery of the certificate was procured by fraud or duress, or was made under such mistake as to make the endorsement or delivery inequitable, or if the delivery was made without authority from the owner, or after the owner's death or legal incapacity. But it does not give protection, as in the case of negotiable instruments, when a negotiation has been obtained by force and fear, or by other unlawful means, or for an illegal consideration. Assuming, but not deciding, that the stock certificate under the Transfer Act is, in a broad sense, a negotiable instrument, we think it sufficient for the decision of this case merely to say that such instrument is a freely transferable evidence-of-title to shares of stock whose situs remains unchanged at the domicile of the corporation. We think the legislature could retain such situs in Missouri under Section 13 without nullifying the rest of the act.

The cases of Haughey v. Haughey, 305 Mich. 356, 9 N. W. (2d) 575 and Mills v. Jacobs, 333 Pa. 231, 4 Atl. (2d) 152 hold that under the Uniform Stock Transfer Act the situs of the share is the situs of the certificate. Those decisions might be persuasive if the legislature had not adopted the Transfer Act with a title giving no indication of any change in the nature of the property right or change in the situs, and containing a different Section 13 which clearly evi-

dences the intent of the legislature that the situs shall not be changed. Giving full effect to Section 13 does not destroy the balance of the act, which can be given a useful and substantial scope without changing the situs of the shares.

In two jurisdictions which have adopted the Uniform Stock Transfer Act but have failed to adopt Section 13 as contained in the recommended act, conclusions have been reached which are in accord with our views. In Central Mortgage Company v. Buff, 278 Mass. 233, 179 N. E. 628, an action was brought under a Massachusetts statute which is analogous to the Missouri attachment statutes, and which permitted a debt to a plaintiff to be determined and satisfied out of the defendant's stock interest in a Massachusetts corporation. The opinion states that under the statute it was not necessary to prove that the certificates for the shares of the debtor were in possession of the debtor, and that the provisions of the Uniform Stock Transfer Act, as adopted in that state, did not require a different conclusion. The Massachusetts Transfer Act appears in General Laws of Massachusetts, Chapter 155, Sections 24-44, and does not include Section 13 of the recommended model Uniform Act. In Partch v. Adams, 55 Cal. App. (2d) 1, 130 Pac. (2d) 244, California had an attachment statute similar to the Missouri statute and then adopted the Uniform Stock Transfer Act, but without Section 13 of such act. The opinion states that it was not necessary for the sheriff to take possession of the certificates in order to hold a valid sale on attachment of the shares. The principal question involved was which of two attachment [704] sales in two different counties in California passed the superior title.

It appears to us that one of the purposes of the Transfer Act was to provide better protection to a purchaser in good faith of a duly endorsed stock certificate or a certificate accompanied by a properly executed stock power. This purpose is accomplished through a number of provisions contained in the act as adopted one of which, Section 7, has been heretofore discussed. The legislature could thus facilitate the use of a stock certificate as an evidence of title without destroying the situs of the shares in Missouri and the jurisdiction of Missouri courts to attach the shares under the pre-existing attachment statutes. Section 13 although clearly out of harmony with the evident intent of the framers of the model act is not so contradictory as to destroy the remainder of the Transfer Act as adopted by our legislature.

Relator points to certain provisions in the Transfer Act for reciprocity with other states and contends that the statute must fail in its purpose unless it complies with the recommended Uniform Act adopted in other states. It is doubtful whether the act is so uniform in other states as relator contends. We find from the opinions previously cited that at least Massachusetts and California have re-

pudiated Section 13 of the model Uniform Act which limits attachment to actual seizure of the stock certificates. In varying degrees these other states have done the same, Colorado, Florida, Georgia, Kansas, and Montana. And it is clear that our legislature did not intend to adopt all of the provisions as proposed in the model Uniform Act. Several amendments were made, and the title was also amended so as to eliminate the words "and to Make Uniform the Law with Relation Thereto" which had been contained in the title of the bill as originally introduced.

Relator urges that Section 13 of the Transfer Act as adopted creates the possibility of two certificates being outstanding representing the same stock, which would create an unconstitutional fictitious increase in stock in violation of Section 7, Article XI, 1945 Constitution, citing Berry v. Rood, 168 Mo. 316, 67 S. W. 644 construing a similar provision of the 1875 Constitution. We do not agree. Such a situation would be analogous to two conflicting chains of title to a tract of real estate, one perhaps commenced by a sheriff's deed. The courts would ultimately have to determine which chain of title is superior. A similar determination would have to be ultimately made as to the conflicting claims of the holders of two different certificates purporting to represent the same shares of stock.

Relator has raised some constitutional points that we do not believe are involved in this case and not properly before us for determination, so we will not discuss them.

Since the circuit court has jurisdiction in the three actions, the preliminary rules in prohibition heretofore issued should be discharged.

It is so ordered. All concur.