Hildegard SCHMIDT, Plaintiff and Appellant,

v.

Martha SCHMIDT, Individually and as Personal Representative of the Estate of Peter Schmidt, Deceased, Defendant and Appellee.

In the Matter of the ESTATE of Peter SCHMIDT, Deceased.

Hildegard SCHMIDT, Plaintiff and Appellant,

v.

Martha SCHMIDT, Defendant and Appellee.

Civ. No. 9313.

Supreme Court of North Dakota.

June 2, 1977.

Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant.

C. J. Schauss, Mandan, for defendant and appellee.

ERICKSTAD, Chief Justice.

We are asked in this appeal to overturn the judgment of the district court for Morton County which found a transfer of real property by Peter Schmidt (now deceased) to himself and his wife, Martha Schmidt, not to be fraudulent as to his former wife, Hildegard Schmidt.

Peter Schmidt and Hildegard Schmidt were married on November 6, 1950, and were divorced in October of 1969. Following the divorce Hildegard was awarded custody of their minor children. The property accumulated during the marriage, including certain real property, was divided between Hildegard and Peter, and Peter was ordered to pay the sum of $150 per month toward the support of the minor children.

Shortly after his divorce, Peter entered into a contract for deed to sell a certain half section of land in Morton County which had been awarded him in the property division, to Albert and Elizabeth Heinert for $44,800. The Heinerts made a downpayment of $21,790 and agreed to pay the sum of $23,010 in fifteen installments of $1534 each, beginning on November 15, 1970 and to be made on November 15th of each year following, with interest at the rate of six percent per year until the sum would be fully paid. On April 15, 1970, Peter married the defendant Martha Schmidt, and on May 6th of that year conveyed title to the land to himself and Martha in joint tenancy.

Peter continued to make child support payments for several months following the transfer: $150 on May 7, $150 on June 8, $150 on July 8, $50 on August 20, $50 on September 5, $75 on November 9, and $75 on December 6th of 1970. There is no evidence that any amount of child support was paid after that time.

Martha testified that Peter worked very little from the time they were married. She testified that Peter tired easily, was short of breath, and slept a lot. He began having nose bleeds in 1972, and consulted a doctor. At that time it was discovered that he had a heart condition, and in May of 1973 he began receiving total disability payments through the Social Security system. He died on March 30, 1975, of a cerebral hemorrhage following open-heart surgery in February of that year.

Hildegard filed a claim in Morton County Court against Peter's estate for the amount due for unpaid child support payments. It was stipulated by Hildegard and Martha, as Peter's personal representative, that the amount due was $6,643.40. There were no assets in the estate to pay the claim, and the county court held that the land which had been held in joint tenancy by Peter and Martha was not included in the estate and thus was not subject to his debts.

Hildegard appealed this decision to the district court of Morton County and brought a separate action in that court to have the conveyance of the property by Peter to himself and Martha in joint tenancy set aside as a fraudulent conveyance. The two actions were joined by stipulation of the parties. The district court by order dated October 19, 1976, affirmed the finding of the county court and dismissed the appeal therefrom, and, after finding that no fraudulent intent existed with regard to the conveyance, entered a judgment dismissing the complaint to set aside the joint tenancy deed. Hildegard appeals from that judgment and order.

The law is clear in North Dakota that joint tenancy property does not pass through the decedent joint tenant's estate, but rather passes to the survivor by reason of the original joint tenancy deed. *Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612 (N.D.1976); *Schlichenmayer v. Luithle*, 221 N.W.2d 77 (N.D.1974); *In re Kaspari's Estate*, 71 N.W.2d 558 (N.D.1955). Thus, both the county court and district

court were correct in holding that the joint tenancy property was not to be included in the estate of Peter Schmidt.

With regard to Martha's claim that the transfer of the property into joint tenancy was a fraudulent conveyance, we must first look to applicable statutory law. Fraudulent conveyances are dealt with in Chapter 13–02, N.D.C.C. Three sections in that chapter could possibly be applicable in this case:

"Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." § 13–02–04, N.D.C.C.

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." § 13–02–06, N.D.C.C.

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." § 13–02–07, N.D.C.C.

■ We do not believe Section 13–02–04 to be applicable as Hildegard made no attempt to show that Peter was insolvent at the time of the conveyance or was rendered insolvent by the conveyance, and there is no such evidence otherwise on the record. Section 13–02–06 requires an intention or belief by the debtor that he "will incur debts beyond his ability to pay as they mature," and Section 13–02–07 requires an actual intent to defraud. Thus, a finding of a fraudulent conveyance under the latter two sections requires a determination of intent, a fact situation subject to Rule 52(a), N.D.R.Civ.P. This issue of fact will be examined later in the opinion.

Chapter 13–02 is not exclusive (See § 13–02–11, N.D.C.C.), and thus, without directly applying the specific sections of that chapter, in a case where a divorced husband acquired property in the name of his second wife and later transferred the property into a corporation, it was held that the property of the corporation was subject to levy and sale for satisfaction of his first wife's judgment upon unpaid periodic payments ordered in a judgment for divorce. *Schriock v. Schriock*, 128 N.W.2d 852 (N.D.1964).

■ In *Schriock*, we reversed the findings of the trial court in a trial de novo, and made a finding that fraudulent intent existed in the transfer of the property by the husband. As trial de novo has been abolished by the Legislature and the trial court in the instant case found that there is no evidence of fraudulent intent on the part of Peter Schmidt in transferring the real property to himself and Martha as joint tenants, our standard of review is the "clearly erroneous" rule set forth in Rule 52(a), N.D.R. Civ.P.

■ This court has stated repeatedly that a finding will be determined clearly erroneous only when, although there is some evidence to support it, this court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *E.g., George v. Compson*, 251 N.W.2d 743 (N.D.1977); *Mattco, Inc. v. Mandan Radio Ass'n, Inc.*, 246 N.W.2d 222 (N.D.1976); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D. 1973). It is with this test in mind that we must review the record.

■ Hildegard, in her brief, argues the fraudulent nature of the conveyance in that Peter "defaulted continuously thereafter in the payments required to be made. . . . " Her own exhibit shows that Peter made full payment for several months following the conveyance, and made partial payments for several more months thereafter. This, in light of Peter's sporadic employment, could be viewed as evidence not of fraudulent intent, but rather as evidence of a lack of such intent.

■ Had Peter transferred the property to Martha in fee, Hildegard's claims as to

the property would have been immediately defeated. However, since the conveyance gave only a joint interest to Martha, it would not restrict Hildegard's obtaining a judgment upon Peter's interest and executing thereon. *See Jamestown Terminal Elevator Inc. v. Knopp, supra,* at 614, and cases cited therein. We find it hard to comprehend that Peter would devise a scheme to defraud his former wife, in which his own death is a necessary element. We further note that there is no evidence on the record to indicate that Peter knew of his serious illness until two years following the conveyance.

In view of the lack of direct evidence of fraudulent intent, and the difficulty in inferring such intent from the evidence existing on the record, we are not convinced that a mistake has been made.

For the reasons stated in the opinion, both the judgment and the order of the district court are affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.