IN RE ESTATE OF RONALD W. KENNEDY, DECEASED.
WAYNE KENNEDY, APPELLANT, V. MARY JOYCE KENNEDY BOOKER,
ADMINISTRATRIX OF THE ESTATE OF RONALD W. KENNEDY,
DECEASED, APPELLEE.

369 N.W.2d 63

Filed June 14, 1985.    No. 84-019.

James M. Carney of Atkins, Ferguson, Zimmerman, Carney and Law, for appellant.

Jack H. Myers of Van Steenberg, Myers & Burke, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

Ronald W. Kennedy died intestate on February 16, 1976. He was survived by his widow, Mary Joyce Kennedy, and three children. A petition for the appointment of Mrs. Kennedy as administratrix of his estate was filed on March 1, 1976, and she was appointed administratrix on March 19, 1976.

At the time of his death Ronald W. Kennedy was engaged in an extensive farming and ranching operation in Kimball County, Nebraska, involving more than 4,600 acres of land and several hired men. His land was owned in joint tenancy with his wife. His property subject to administration consisted of cattle, crops, machinery, and equipment. At the time of his death he was in debt to the Kimball County Bank, the federal land bank,

and the Farmers Home Administration for nearly $381,000, and was indebted to his father, Wayne Kennedy, on an open account in an amount of more than $48,000.

On March 31, 1976, the county court authorized the administratrix to continue the farming and ranching operations in which the deceased had been engaged at the time of his death.

The claim of Wayne Kennedy against the estate was finally allowed in the amount of $48,161.08 by the district court.

On September 22, 1978, the administratrix filed her report for the period February 16, 1976, to August 11, 1978. A report covering the period August 11, 1978, to April 27, 1981, was filed on May 19, 1981. Objections to these reports were filed by the claimant, Wayne Kennedy.

The account, as approved by the county court, showed that there was due the administratrix from the estate the sum of $189,335.67; that there was due from the administratrix $82,039.25 for items of receipt which belonged to the estate and items of disbursement which were personal; that the value of the remaining assets of the estate was substantially less than the $107,296.42 balance due the administratrix; and that there were no assets or funds remaining from which the claim of Wayne Kennedy could be paid. Upon appeal to the district court the order of the county court was affirmed. From that judgment the claimant has appealed to this court.

The claimant contends the trial court erred in not avoiding the "contract" between the administratrix and herself regarding care of the cattle; in allowing the administratrix the sum of $160,380 for care of the cattle; in finding that growing crops upon the land held in joint tenancy were not subject to the claims of creditors; and in failing to charge the administratrix for federal estate taxes paid on her behalf by the estate.

With respect to the first two assignments, the claimant seeks to set aside the $160,380 allowed the administratrix for cattle care, either because it was a voidable transaction or because it was unconscionable under the circumstances.

Although the decedent's death preceded the effective date of the Nebraska Probate Code, and the county court granted an application for the proceeding to continue under the former statute, the code governs the substantive rights of the parties.

See Neb. Rev. Stat. § 30-2901 (Reissue 1979).

Neb. Rev. Stat. § 30-2474 (Reissue 1979) provides in pertinent part:

> [A]ny transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless . . . (2) the transaction is approved by the court after notice to interested persons.

The general rule is that a personal representative cannot deal with the estate's assets for personal profit or gain. *In re Estate of Statz*, 144 Neb. 154, 12 N.W.2d 829 (1944). Any self-dealing is suspect and subject to close scrutiny by the court.

The only exception to self-dealing is where it is shown that the transaction was in good faith and promotive of the interests of the estate. 33 C.J.S. *Executors and Administrators* § 239 (1942); *Matter of Estate of Gaylord*, 552 P.2d 392 (Okla. 1976).

The record supports a finding that the transaction in this case was in good faith.

The administratrix was authorized by the county court to continue her husband's farming and ranching operations in order to preserve the assets of the estate. The assets included 296 head, or "units," of cattle and 9 bulls. The administratrix continued the procedures which had been used by the decedent in caring for the cattle. She, as landowner, provided winter and summer pasturing and the cost of one-half the feed grown on her land for use by the cattle. The estate provided labor, machinery, irrigation, and one-half the cost of feed.

There was no "contract" in the legal sense between the administratrix and herself concerning the care of the cattle. The entire matter was tried before the county court at the hearing on her reports and final accounting. The issue before the county court was what amount should be allowed to the administratrix for the use of her land and the hay furnished in caring for the cattle which were an asset of the estate. The issue here is whether the amount allowed was erroneous as a matter of law.

The application to continue the cattle operation was based in part upon the fact that the estate was approximately $430,000 in debt at the time of the decedent's death. According to the

inventory filed in November 1976, the estate had negative assets of $1,635.39 after secured claims were paid. The administratrix proposed to continue the decedent's farm operations in an attempt to preserve the assets of the estate by paying off the existing indebtedness. See Neb. Rev. Stat. § 30-2476 (Reissue 1979). As it turned out, she was able to pay off the major debts.

The record does not sustain the claimant's contention that the amount allowed the administratrix for cattle care was unconscionable under the circumstances. The appellant claims that the amount allowed included a profit for the administratrix, but the record does not support this contention. The administratrix was charged for expenses in pasturing and raising feed for the cattle before receiving a credit to reimburse her for land use and feed. She was not allowed to charge the estate for her expenses and then require an additional payment for the same things.

Both the administratrix and the claimant presented expert testimony in regard to the reasonable value of the care of the cattle by the administratrix. The expert witness called by the administratrix testified that the amount claimed by the administratrix, approximately $248,000, was fair and reasonable. The expert witness called by the claimant testified that $118,800 would be a fair and reasonable amount. This figure included 33 percent "profit" for labor and incidental expenses. Apparently, the county court accepted the administratrix's evidence and reduced it by 33 percent to arrive at approximately $160,000, the amount allowed. With such a reduction no profit is evident in the award.

The claimant next challenges the district court's failure to subject the proceeds from the decedent's 1976 wheat crop to the claims of creditors.

The 1976 wheat crop was grown on the land held in joint tenancy by the decedent and the administratrix. Upon the death of one joint tenant, the land passes to the surviving tenant free from the debts of the deceased joint tenant. *Schmidt v. Schmidt*, 254 N.W.2d 102 (N.D. 1977); *DeForge v. Patrick*, 162 Neb. 568, 76 N.W.2d 733 (1956); *Sherman County Bank v. Lonowski*, 205 Neb. 596, 289 N.W.2d 189 (1980). Crops standing on the land, whether matured or not, pass with the

land to the surviving joint tenant and are not an asset of the estate of the deceased tenant subject to administration. *In re Estate of Pope*, 83 Neb. 723, 120 N.W. 191 (1909).

The administratrix, as the surviving joint tenant, succeeded to the ownership of the land. The crops growing on the land became her own property when the decedent died. As the crops were hers, they were not an asset of the estate and not subject to the claims of creditors. *Schmidt, supra.*

The appellant's final claim is that the administratrix should reimburse the estate for federal estate taxes paid by the estate for her benefit. Federal estate taxes in the amount of $14,520.80 were paid out of the assets of the estate.

Neb. Rev. Stat. § 77-2108 (Reissue 1981) provides that federal estate taxes are to be apportioned among the persons interested in the estate. *Nielsen v. Sidner*, 191 Neb. 324, 215 N.W.2d 86 (1974). See *Naffziger v. Cook*, 179 Neb. 264, 137 N.W.2d 804 (1965). The policy behind this requirement is that every portion of the estate that created the tax should bear its fair share of the tax burden. *Nielsen, supra.*

The estate tax return filed by the administratrix shows that she was the only beneficiary of the estate. Since she was the recipient of whatever portion of the estate created the tax, she should be charged with its payment. This reduces the credit owed to her by the estate to $92,775.62.

Even with this reduction, there are no assets available with which to satisfy the appellant's claim.

The judgment of the district court should be modified to charge the federal estate taxes to the administratrix. As so modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.

WHITE, J., participating on briefs.