IN RE ESTATE OF RICHARD P. ROSSO, DECEASED.
LINDA ROSSO, APPELLANT, V.
SANDRA A. ROSSO, APPELLEE.
701 N.W.2d 355
Filed July 29, 2005. No. S-04-391.

324

James H. Monahan and Maureen K. Monahan, of Monahan & Monahan, for appellant.

Thomas K. Harmon, of Respeliers & Harmon, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

This is an appeal from a formal probate proceeding involving the estate of Richard P. Rosso. Richard's wife, Sandra A. Rosso, and Richard's daughter, Linda Rosso, dispute the ownership of stock Richard held in the Strata Real Estate Corp. (Strata).

Specifically, Linda contends that Richard was the sole owner of the stock, while Sandra argues that the stock was held in joint tenancy by Richard and Sandra. The county court ruled in favor of Sandra and determined that the stock became the sole property of Sandra when Richard died. The issues presented in this appeal are whether Sandra was precluded from making a personal claim to the stock by virtue of her appointment as personal representative of the estate and whether the court required Sandra to meet the correct burden of proof.

## BACKGROUND

Sandra and Richard were married in 1969 and had two daughters together. Linda is Richard's daughter from a previous marriage. As relevant, Richard's will, executed February 13, 2001, devised one-half of his estate to Sandra and divided the other half equally among his three daughters. Sandra was nominated in the will to be the personal representative of Richard's estate. The validity of the will is not at issue on appeal.

Richard died on April 10, 2003. On June 12, Linda filed a petition for formal adjudication of intestacy in the county court. However, on June 27, Sandra filed an application for informal probate of Richard's will and nominated herself as personal representative of the estate. The inventory of Richard's estate, filed June 27, included shares of Strata, which, according to the inventory, had been held by Richard and Sandra in joint tenancy with right of survivorship. The shares were valued in the inventory at $220,000, although the record suggests that the corporation was worth far more. The inventory also listed investment accounts that Richard held in joint tenancy with each of his three daughters.

On July 3, 2003, Sandra filed a petition for formal probate of Richard's will. The court scheduled a hearing on the formal petition, and prior to the hearing, Linda filed an objection to Sandra's appointment as personal representative, because "she has a conflict of interest, in that she claims property of the Deceased as her property as joint tenant." After a hearing, on November 20, the court found in favor of Sandra, admitted Richard's will to formal probate, and appointed Sandra to serve as personal representative of Richard's estate in unsupervised administration. Thereafter,

the court scheduled a hearing on Sandra's application for a declaration of ownership of assets. A hearing was held on March 1, 2004, to determine whether the Strata stock was held in joint tenancy with Sandra.

At the hearing, Sandra testified that she became involved in Richard's business enterprises the day they were married, initially doing office work, and then becoming a corporate officer and director. According to Sandra, she had been the secretary-treasurer of Strata from 1970 to the present. In her answers to Linda's interrogatories, Sandra stated that she had become a shareholder in Strata in the winter of 1979-80 and that the shares had been reissued in the name of Richard and Sandra as joint tenants with right of survivorship. However, Sandra stated that all the original documents "were destroyed in a flood of the corporate office in the early 1990's."

Sandra testified at the hearing that Strata had two shareholders: herself and Richard. Sandra said that she became a shareholder "about in the late '70's," because Strata was negotiating with the government for the purchase of some land, and they were required to bring the corporate minutes up to date. Sandra testified that shares of Strata stock had been generated that were held by Richard and Sandra in joint tenancy with right of survivorship and that she had physically prepared those shares of stock in her capacity as secretary-treasurer of the corporation. Sandra also said that the transfer had been made on the corporate books.

However, Sandra did not have copies of the corporate books or stock certificates. Sandra explained that

> [w]e had a lateral file in [Richard's] office. And all of the abstracts for — for the properties that we owned, the corporate books, were all kept in the top shelf of the lateral file. And a pipe — there's a bathroom upstairs above his office, and a pipe broke and everything flooded. And I — I was working at the hospital at that time, so I wasn't — didn't go in and out of the offices frequently. And it was some time between '92 and '98, and we went to find them [and Richard] had thrown everything away.

Roger Alger, a certified public accountant, testified that he had been Richard's accountant since 1979. Alger testified that he had also "dealt considerably" with Sandra. Alger stated that Sandra

had been responsible for keeping all the monthly accounting records and payroll records for Strata and another, now-defunct corporation in which Richard had an interest. Alger had also prepared other documents for several limited partnerships. Alger testified that he had "fairly good knowledge of the intricate workings" of Strata but had never seen any stock certificates or corporate minutes books for Strata. Alger explained, with reference to the stock ownership, that

> [t]he stock was held jointly, but for tax purposes we always considered that [Richard] held them in his own. And that was only because of tax attributions — a man and wife are considered one for tax purposes, so we never — we never designated one or the other. It was always Richard had a hundred percent.

An IRS Form 2553 subchapter S election form for Strata, dated March 30, 2001, listed Richard as the sole shareholder of Strata. Alger explained with reference to that form that "the hundred percent just meant that he and his wife — he controlled his wife's shares. So that's how come we filed it that way." Alger explained that the subchapter S election was done to avoid double taxation but that Strata had to remain an S corporation for a period of 10 years or "everything would be sucked back into the 'C' corporation and double-taxed." Alger said that the subchapter S election form was not an attempt to illustrate the ownership of the shares and that Richard "wanted that to be jointly held because he didn't feel that he would live the ten years, and we had to keep the corporation alive ten years. He knew [about] that ten-year period."

The schedule K-1 attached to the tax return for Strata for the tax year 2001, prepared January 15, 2003, identified only Richard as a shareholder. Strata's tax return for the tax year 2002, prepared December 26, 2003, included both Richard and Sandra on attached schedules K-1. Alger explained that the forms for tax year 2001 had been filed on extension, because Richard had been ill. Alger testified that the tax forms for the tax year 2002 had been completed differently because Richard specifically told Alger that the corporate stock of Strata was held in joint tenancy with Sandra. Alger also explained that the forms for the tax year 2002 had been prepared according to

Richard's instructions, although because a filing extension was obtained, the forms were not prepared and filed until after Richard's death. Alger indicated there was no question in his mind that Richard understood all shares of Strata stock were held in joint tenancy with right of survivorship and that Richard "was even angry that I asked the question."

James Stumpf, an Omaha attorney, testified that he became acquainted with Richard in 1997 and 1998, when Richard sought Stumpf's legal advice with respect to some contracts. Stumpf was somewhat familiar with the workings of Strata and was also responsible for preparing Richard's will. Stumpf testified that during the preparation of Richard's estate plan, Richard told Stumpf that with the exception of some oil revenues, all of Richard's assets were in joint tenancy. Stumpf said Richard had specifically indicated that the Strata stock was held in joint tenancy with Sandra. Stumpf said that he had explained to Richard that because his assets were in joint tenancy, a written will was superfluous, but Richard had insisted on having a will anyway.

Linda testified that she was not the record holder of any Strata stock. However, Linda testified that Richard "talked to me at different times, and he told me that I had forty-nine percent, and he had fifty-one percent." Linda also testified that Richard had told her, on one occasion, that she was "down as Vice President" and told her at another point that she was treasurer, although she had never filed a treasurer's report. Linda admitted Richard had never given her any stock certificates. Linda said Richard had given her money on occasion, but did not know if any of that money represented corporate dividends.

Linda said that she was surprised to be informed Richard's property was held in joint tenancy, because "he told me something totally different." Linda testified Richard had told her she would receive one-sixth of his estate, but never told her his Strata stock was held in joint tenancy.

Linda stated that Sandra had been hostile toward Linda and that Richard advised Linda to

> get an attorney because he was afraid I wasn't going to get my fair share; and that — he said [Sandra] wanted the whole thing, but he only gave her half. And in an earlier point he

had told me he was gonna introduce me to . . . Stumpf because he was afraid I wouldn't get my fair share.

After the hearing, the county court determined by a preponderance of the evidence that the Strata stock was held by Richard and Sandra in joint tenancy with right of survivorship and that Sandra owned the stock as the surviving joint tenant. The court entered an order to that effect. Linda appeals.

## ASSIGNMENTS OF ERROR

Linda assigns, as summarized and restated, that the county court erred in (1) allowing Sandra to present her personal claim to the assets of the estate rather than following her fiduciary duty to claim the assets for the estate and (2) determining that (a) joint tenancy need only be proved by a preponderance of the evidence and (b) Sandra proved Richard's assets were jointly held assets and not the property of his estate.

## STANDARD OF REVIEW

■■■ Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995 & Cum. Supp. 2004), are reviewed for error on the record. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

■■■ The underlying dispute in this case is whether the Strata stock had been solely Richard's or had been held in joint tenancy with Sandra. An interest held in joint tenancy is considered "per my et per tout"—by the half and by the whole—which means that each joint tenant owns the whole of the property from the time at which the interest is created. *Mahlin v. Goc*, 249 Neb. 951, 547 N.W.2d 129 (1996). A surviving joint tenant's interest attaches by means of the original conveyance, not by transfer from the decedent. *Id.* Property owned in joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of the other and does not pass by virtue of the provisions of the will

of the first joint tenant to die. *Norwest Bank Neb. v. Katzberg*, 266 Neb. 19, 661 N.W.2d 701 (2003).

Thus, if the Strata stock was held in joint tenancy, it belongs solely to Sandra. If it was solely Richard's property, however, a portion of the stock could pass to Linda under Richard's will. Linda claims Sandra should not have been permitted to claim that the Strata stock was held jointly, because of her fiduciary duty to the estate, and that the evidence presented at the hearing was insufficient to establish that the stock was held in joint tenancy.

## FIDUCIARY DUTY OF PERSONAL REPRESENTATIVE

We begin this section of our analysis by explaining what issues are presented here. Not all of the arguments made in Linda's brief are properly before us in this appeal.

For multiple reasons, we do not consider the argument in Linda's appellate brief that the administration of the estate should be supervised and that Sandra and her attorney "should be removed as representatives of the estate and their actions voided." Brief for appellant at 13. First, while Linda objected in the county court to the appointment of Sandra as personal representative of the estate, she did not make a motion to have Sandra removed, or take any other timely action to seek appellate review of that issue. See, *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005); *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989) (order overruling motion to remove personal representative is final, appealable order). Cf. *In re Estate of Casselman*, 219 Neb. 653, 365 N.W.2d 805 (1985) (affirming order that had appointed personal representative over objection). See, also, *Moss v. Eaton*, 183 Neb. 71, 157 N.W.2d 883 (1968) (explaining interdependency between objection to appointment of personal representative and proceedings to remove personal representative). Furthermore, even if the question of Sandra's appointment as personal representative was presented in a timely appeal, Linda did not assign Sandra's appointment as error in this appeal.

Linda's assignment of error and supporting argument, as we understand it, is that Sandra's fiduciary duty to the estate, as personal representative, should have precluded her from claiming that the Strata stock was held in joint tenancy. However, there is no indication in the record that this argument was presented to the county court. Linda objected in the county court to Sandra's

appointment as personal representative, on the basis of an alleged conflict of interest, and then litigated the issue of the Strata stock ownership on the merits of that dispute. The record does not indicate that Linda ever argued to the county court that Sandra's claim to ownership of Strata should be stricken because of a conflict of interest.

In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). We find no such plain error. Linda appears to be arguing that by virtue of her fiduciary duty to the estate, Sandra was required, in her capacity as personal representative, to claim that the Strata stock was the property of the estate, and was further required, in her individual capacity, to refrain from claiming personal ownership of the Strata stock. Linda is incorrect on both points.

It is not disputed that a personal representative is a fiduciary and that there is a fiduciary relationship between a personal representative and the estate of the deceased, as well as the heirs, beneficiaries, and all persons interested in the estate. See, § 30-2464; *Johnson v. Richards*, 155 Neb. 552, 52 N.W.2d 737 (1952). The personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and the Nebraska Probate Code, and as expeditiously and efficiently as is consistent with the best interests of the estate. § 30-2464.

But that duty does not extend beyond the assets that actually belong to the estate. For instance, in *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998), the plaintiff and decedent had been the joint owners of three bank accounts. A bank, acting as personal representative of the decedent's estate, took possession of the proceeds of each account, and took the position that the funds were assets of the estate. The plaintiff sued the bank for conversion. The district court entered summary judgment for the bank, but we reversed that judgment. We concluded that the "uncontroverted facts [were] sufficient to establish distinct acts of dominion inconsistent with [the plaintiff's] ownership rights" and that under the facts of the case, "the record [did] not reflect a bona

fide reasonable detention of the funds by [the bank] for the purpose of ascertaining ownership." *Id.* at 420-21, 585 N.W.2d at 453. *Zimmerman* stands squarely for the proposition that a personal representative's fiduciary duty does not permit, much less require, the personal representative to take possession of property that does not lawfully belong to the estate.

Furthermore, we have recognized that as a general rule, those who are directly interested in estates are usually selected and appointed as personal representatives. See *Estate of Haeffele*, 145 Neb. 809, 18 N.W.2d 228 (1945). It is common practice for a will to nominate a personal representative who is close to, or related to, the testator, and it is thus not uncommon for the nominated personal representative to have an interest in the estate, or in other property of the decedent. That the named personal representative is interested in the estate and that his or her interest may become hostile to those of the other interested beneficiaries does not necessarily render the personal representative legally incompetent. See *id.* If the individual interest of the personal representative comes into irreconcilable conflict with the interests of the estate, then the county court has the authority to act to protect the interests of all by restraining or removing the personal representative, or supervising the personal representative's administration of the estate. See, *id.*; §§ 30-2440 through 30-2443 and 30-2450. In other words, the procedure established by the Nebraska Probate Code for dealing with a personal representative's actual conflict of interest is to replace, restrain, or seek supervision of the personal representative, not to try and eliminate the personal representative's individual interests.

Linda cites *In re Estate of Kennedy*, 220 Neb. 212, 214, 369 N.W.2d 63, 65 (1985), for the general rule that "a personal representative cannot deal with the estate's assets for personal profit or gain." However, that proposition is not relevant here. In that case, the administratrix of an estate maintained the decedent's ranching operation and, as the landowner, provided pasturing and feed for the cattle. The county court allowed the administratrix compensation from the estate for the pasturing and feed. We concluded that the compensation was allowable, as the administratrix had not profited from the transaction. But the question there was premised on the fact that the administratrix was engaged in self-dealing,

because she had done business, in an individual capacity, with the estate for which she served as a fiduciary. For instance, in this case, if Sandra had purchased corporate stock from the estate, she would have had the burden of showing that the transaction was in good faith and promotive of the interests of the estate. See *id.* But no such self-dealing occurred here, and *In re Estate of Kennedy* has no application under these circumstances.

Finally, we note that to resolve contested issues, the probate code permits a personal representative to "invoke the jurisdiction of the court, in proceedings authorized by this code, to resolve questions concerning the estate or its administration." § 30-2465. That authority was used in this case to allow the county court to hold a hearing and determine the ownership of the Strata stock. Plain error must prejudicially affect a substantial right of a litigant. See *McClure v. Forsman*, 266 Neb. 90, 662 N.W.2d 566 (2003). Given Sandra's invocation of the county court's jurisdiction to determine the question of stock ownership in a contested hearing, we have difficulty seeing how, if at all, Linda was prejudiced by Sandra's purported conflict of interest, since the dispute was resolved by a disinterested party: the county court.

For the foregoing reasons, we find no plain error in the county court's permitting Sandra to claim that the Strata stock had been held in joint tenancy. We reject Linda's first assignment of error.

EVIDENCE OF JOINT TENANCY

■ We note, initially, that Linda's appellate brief makes passing references to a bank account, treasury note, and investment account; Linda argues that Sandra presented no evidence that these assets were held in joint tenancy. Sandra's failure to present evidence regarding those assets is not surprising, given that the only issues actually raised in or decided by the county court related to the Strata stock. Consequently, our consideration of Linda's assignment of error and supporting argument is limited to the ownership of the Strata stock, because in appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003).

Linda assigns that the county court erred in determining that the relevant burden of proof on the issue of joint tenancy was a

"preponderance of evidence." Linda cites *White v. Ogier*, 175 Neb. 883, 891, 125 N.W.2d 68, 74 (1963), for the proposition that a joint tenancy must be proved by "clear, satisfactory, and convincing" evidence. But the question presented in this case is not the same as that presented in a case such as *White*, in which the issue was whether an instrument or transaction created a joint tenancy with right of survivorship, as opposed to some other ownership interest.

The question in this case is not what ownership interest Richard intended to create by transferring his stock, but, rather, whether he did so at all. For that reason, the trial in this matter focused on proving the existence and contents of the stock certificates. In that regard, this case is less like a joint tenancy case, such as *White*, than it is a case involving proof of the terms of a lost or destroyed instrument. A party seeking to recover upon a lost instrument has the burden of proving the former existence, execution, delivery, theft or loss, and contents of the instrument by clear and convincing evidence. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992); *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). See, also, e.g., *Fales v. Norine*, 263 Neb. 932, 644 N.W.2d 513 (2002); *In re Estate of Miller*, 231 Neb. 723, 437 N.W.2d 793 (1989). See, generally, 52 Am. Jur. 2d *Lost and Destroyed Instruments* § 24 et seq. (2000).

For these purposes, a stock certificate, while not a negotiable instrument, is still fairly considered an "instrument" in the broader sense of the term, as a token of the legal rights it represents, normally delivered to any person to whom the rights are transferred. See *Citizens Nat. Bank of Orlando v. Bornstein*, 374 So. 2d 6 (Fla. 1979), citing *First Nat'l Bk. In Grand P. v. Lone Star Life Ins. Co.*, 524 S.W.2d 525 (Tex. App. 1975). See, also, *Matter of Estate of Evanco*, 955 P.2d 525 (Alaska 1998); *State ex rel. N. American Co. v. Koerner*, 357 Mo. 908, 211 S.W.2d 698 (1948) (stock certificate is instrument representing tangible evidence of title to unique type of intangible property). Because the existence and contents of the allegedly destroyed stock certificates are the linchpin of Sandra's argument, we conclude that the appropriate burden of proof is the burden of proof applicable when a party seeks to recover on a lost instrument.

The county court, however, concluded that Sandra had proved her claim only by a preponderance of the evidence. We cannot say that the court would have necessarily concluded that Sandra had presented clear and convincing evidence of her claim. Therefore, the county court's judgment must be reversed, and this cause remanded for a new trial on the narrow issue of whether Sandra has presented clear and convincing evidence of the existence and contents of the allegedly destroyed stock certificates.

 Although that conclusion is dispositive of this appeal, we nonetheless consider Linda's remaining arguments with respect to the sufficiency of the evidence, as they are likely to recur on retrial. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004). For the reasons that follow, we reject Linda's claim that the record before us was insufficient to establish Sandra's claim even by a preponderance of the evidence.

 Linda argues that even assuming that the stock was jointly held and that the certificates were destroyed, as Sandra testified, Richard's disposal of those certificates and failure to replace them were actions inconsistent with joint tenancy that destroyed Sandra's right of survivorship. An existing estate in joint tenancy can be destroyed by the act of one joint tenant which is inconsistent with joint tenancy, and such act has the effect of destroying a right of survivorship incidental to it. *Krause v. Crossley*, 202 Neb. 806, 277 N.W.2d 242 (1979). The common-law rule that a joint tenancy must contain the four unities of time, title, interest, and possession still persists unless modified by statute; in other words, joint tenants have one and the same interest accruing by one and the same conveyance commencing at one and the same time and held by one and the same undivided possession. *Id.* Any act of a joint tenant which destroys one or more of the coexisting unities operates as a severance and extinguishes the right of survivorship. *Id.*

 But Richard's disposal of the stock certificates, if shown at retrial, would do nothing to alter any aspect of the stock's ownership. There is a distinction between the certificate issued to a shareholder and the "share" issued to the shareholder. A share of

stock is the actual property of the shareholder, while the stock certificate is merely the authentic evidence of the stockholder's ownership of shares. *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536 (1989), citing *Federal Deposit Ins. Corporation v. Gunderson*, 106 F.2d 633 (8th Cir. 1939). Although stock certificates are tokens of ownership, there was no evidence to suggest that Richard destroyed the stock certificates at issue in this case in an attempt to affect the actual ownership of the corporation. Richard merely disposed of the damaged evidence of stock ownership; his act did not affect the actual ownership of the stock and, consequently, did not affect any of the unities of joint tenancy.

Linda also contends that even if Alger's testimony is accepted, his statement that Richard "controlled his wife's shares" would serve to negate any sort of joint tenancy. Linda cites *Young v. McCoy*, 152 Neb. 138, 40 N.W.2d 540 (1950), for the proposition that the transfer of a bank account, to take effect at the death of the depositor who retains control during his life, is testamentary in character and void if not executed as a will. We first note that this proposition has long since been abrogated by statute, as the Nebraska Probate Code specifically authorizes the creation of nontestamentary, nonprobate transfers on death. See § 30-2715 et seq.

But even if the proposition cited by Linda retained vitality, it is not relevant in the instant case, because Richard and Sandra's asserted joint tenancy of Strata would give Sandra immediate ownership of the whole of the property, regardless of who controlled the corporation as a practical matter. See *Mahlin v. Goc*, 249 Neb. 951, 547 N.W.2d 129 (1996). Although she possessed a right of survivorship, Sandra's joint ownership interest in Strata was immediately effective and was not contingent upon Richard's death.

Furthermore, where property is held in joint tenancy, each joint tenant owns the whole of the property from the time at which the interest is created. *Heinold v. Siecke*, 257 Neb. 413, 598 N.W.2d 58 (1999). Thus, Richard's control of Strata was consistent with his right, as a joint tenant, to possession of the whole of the property. The fact that Richard retained control of the stock would not defeat the transfer of the stock into joint tenancy with a right of survivorship. See *Crowell v. Milligan*, 157

Neb. 127, 59 N.W.2d 346 (1953), *overruled on other grounds, White v. Ogier*, 175 Neb. 883, 125 N.W.2d 68 (1963) (decedent's control of stock and collection of dividends did not defeat valid inter vivos gift creating joint tenancy with right of survivorship).

## CONCLUSION

We conclude that the county court did not commit plain error in permitting Sandra to claim that the Strata stock had belonged to herself and Richard as joint tenants. However, the county court's judgment did not conform to the law when it found the appropriate burden of proof to be a preponderance of the evidence in this matter. Therefore, the judgment of the county court is reversed, and the cause is remanded for a new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.