EARL A. FOSTER, Plaintiff and Respondent, v. FIRST
NATIONAL BANK OF MISSOULA, a National Banking
Association, Defendant and Appellant, Triangle Develop-
ment Co., a Corporation, Cross-Defendant.

No. 10239.

Submitted June 7, 1961. Decided September 15, 1961.

365 P.2d 938.

Smith, Boone & Rimel, Russell E. Smith, Missoula, Robert J. Boyd, Anaconda, for cross-defendant. Russell E. Smith, argued orally.

Ralph J. Anderson, Stanley P. Sorenson, Helena, for respondent. Stanley P. Sorenson, argued orally.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant, the First National Bank of Missoula, a national banking association, from a judgment against it and in favor of the plaintiff, Earl A. Foster. The action is in tort for damages for conversion of certain personal property.

The complaint states a cause of action for conversion. It alleges that the plaintiff Foster had defaulted in payments due under a conditional sales contract held by the defendant, The First National Bank of Missoula, in the sum of $1,107.40, covering the purchase price of two trucks and a trailer; that after repossession of the trucks and trailer, the sum then owing to that date on the contract was paid by the Triangle Development Company in the plaintiff's behalf; that the defendant bank accepted and applied the $1,107.40 to the discharge and payment of the past due installments on the contract with full knowledge that such $1,107.40 was paid in behalf of the plaintiff Foster; that the plaintiff Foster thereupon became and was entitled to the immediate possession of the trucks and trailer; that the defendant bank thereafter wrongfully entered

into an agreement with the Triangle Development Company to dispose of the trucks and trailer to the latter and, in fact, the defendant bank did transfer possession of said trucks and trailer to the Triangle Development Company; that the defendant Bank wrongfully exercised ownership over the property and failed to deliver possession to the plaintiff Foster; and that by reason thereof the plaintiff Foster was damaged in the sum of $6,540.60.

The defendant Bank admitted that the property was in the possession of the Triangle Development Company but denied all other allegations of the plaintiff's complaint.

The defendant Bank alleged that when the property was repossessed by it, that such repossession constituted a rescission of the conditional sales contract; that payment of the $1,107.40 by the Triangle Development Company did not reinstate the contract for the plaintiff Foster's benefit; that the Triangle Development Company merely paid the $1,107.40 for the purpose of obtaining for itself the trucks and trailer; and that the Triangle Development Company should have been made a co-defendant in the action against the Bank.

The defendant Bank filed, in this action, a cross-complaint against the Triangle Development Company, which cross-complaint was dismissed by the trial court on motion of the Triangle Development Company. The correctness of the trial court's order dismissing the cross-complaint against the Triangle Development Company is not questioned by anyone on this appeal.

The evidence shows that:

Prior to October 16, 1958, Bud Lake Truck Stop, a Montana corporation, sold a 1953 GMC truck, a 1947 Federal truck, and a 1958 utility logging trailer to the Triangle Development Company, a Montana corporation, on a conditional sales contract which contract Bud Lake Truck Stop thereafter sold to the defendant Bank.

On October 16, 1958, the Triangle Development Company,

with the consent of the defendant Bank, sold its interest in the trucks and trailer to the plaintiff, Earl A. Foster, under another conditional sales contract wherein the plaintiff Foster agreed to pay the defendant Bank $16,477.84 in monthly installments of $657.75.

The evidence shows that a number of these monthly installments were paid as per agreement, but that by March 12, 1959, the plaintiff Foster became and was in arrears with his payments in the amount of $1,107.40. This latter sum the plaintiff Foster was unable to pay, on demand, and on March 13, 1959, George Henderson, president of the Triangle Development Company, acting for and on behalf of the defendant Bank, repossessed the two trucks and trailer even though the Triangle Development Company owed the plaintiff Foster an amount in excess of the $1,107.40.

On March 18, 1959, five days after repossession and while the trucks and trailer were in the possession of the defendant Bank, the Triangle Development Company delivered its check to the defendant Bank in the sum of $1,107.40. This check was made payable to both the plaintiff Foster and the defendant Bank, and represented money then due and owing to the plaintiff Foster from the Triangle Development Company. The undisputed evidence is that the defendant Bank, without contacting the plaintiff Foster and without obtaining Foster's endorsement on the $1,107.40 check, placed the Bank's guaranteed endorsement upon such check and cashed it.

The evidence further shows that on March 18, 1959, the defendant Bank applied the proceeds of the $1,107.40 check in satisfaction and discharge in full of all the unpaid past due installments that had then become due from the plaintiff Foster on his conditional sales contract with the defendant Bank.

Upon cashing the $1,107.40 check on March 18, 1959, the defendant Bank, instead of delivering the two trucks and trailer to the plaintiff Foster, delivered the same to the Tri-

angle Development Company. According to the evidence, the delivery was made pursuant to an agreement entered into by and between the defendant Bank and the Triangle Development Company. The evidence further shows that the plaintiff Foster had no information or knowledge of such agreement and was at no time ever a party thereto.

As to the $1,107.40 check, the record shows: The plaintiff Foster had business dealings which involved certain hauling done by Foster for the Anaconda Copper Mining Company, the payment for which was made by the Anaconda Copper Company direct to the Triangle Development Company. The Triangle Development Company would then deliver the payment to the plaintiff Foster.

As of March 12, 1959, there was earned, due, owing and unpaid to Foster for hauling done by him for the Anaconda Company, a sum in excess of the $1,107.40 which was the total sum that was then past due and owing on Foster's conditional sales contract with the defendant Bank.

Thereafter, and prior to March 18, 1959, the Anaconda Company delivered to the Triangle Development Company the money which the Anaconda Company owed Foster for his hauling up to February 25, 1959, which sum was in excess of the $1,107.40 in past due installments which Foster owed the defendant Bank.

It follows, therefore, that the $1,107.40 check delivered to the Bank on March 18, 1959, represented money earned by and belonging to the plaintiff Foster; that the $1,107.40 had been paid to the Triangle Development Company for the plaintiff's use and benefit; and that when the $1,107.40 check was delivered to the defendant Bank, Foster and not the Triangle Development Company was to receive credit on Foster's contract with the Bank.

The record further shows that on April 10, 1959, the defendant Bank applied to the Registrar of Motor Vehicles of the State of Montana for repossession titles to the 1953 GMC

truck and the 1958 utility logging trailer. On April 13, 1959, the defendant Bank applied for the repossession title to the 1947 Federal truck. However, because of plaintiff Foster's protests and objections, these requested titles were never issued.

The record discloses that no demand was ever made by plaintiff Foster upon either the defendant Bank or the Triangle Development Company for a return to him of the trucks and trailer.

The jury found that there had been a conversion by the defendant Bank on March 18, 1959, and such jury awarded damages to plaintiff Foster in the sum of $6,540.60 together with interest thereon from the date of the conversion.

The defendant Bank contends that it is not liable in conversion because of the plaintiff's failure to make demand

 Where the original taker acquires possession of the property rightfully, a demand and refusal are ordinarily necessary to give rise to a cause of action in conversion. Duckett v. Biggs, 57 Mont. 443, 188 P. 938; Scott v. Waggoner, 48 Mont. 536, 139 P. 454, L.R.A.1916C, 491; Hennessy Co. v. Wagner, 69 Mont. 46, 220 P. 101; Beyerlein v. Whitcomb, 95 Mont. 293, 26 P.2d 349; 89 C.J.S. Trover & Conversion § 55, p. 559. However, "Where the initial taking is wrongful, *or where there is an independent act of conversion through assertion of title or exercise of dominion inconsistent with the rights of plaintiff,* or where it is clear that a demand would have been useless or unavailing, a demand is not necessary. 89 C.J.S. Trover & Conversion §§ 55, 57, pp. 558, 561." Evans v. Carroll & Co., D.C.Mont., 155 F.Supp. 662, 667. Emphasis supplied.

It is undisputed that the defendant Bank had actual possession of the trucks and trailer and that at the outset such possession was clearly rightful. The plaintiff Foster does not contend otherwise. It is also undisputed that no demand was ever made that the defendant Bank return the trucks and

trailer. However, under the record before us no demand was necessary.

In order to avoid the necessity of making a demand, some affirmative act of conversion on the part of the defendant is necessary.

The evidence here is ample to show an affirmative act of conversion on the part of the defendant Bank, thus obviating the necessity of a demand.

When a purchaser under a conditional sales contract, or his assignee, is in default in the payment of installments of the price under the contract, the seller, or his assignee, may retake the property sold or he may collect the past due installments. However, the seller may not do both. Johnson v. Sanderson, 132 Mont. 451, 455, 318 P.2d 248.

As a general rule, a conditional seller who accepts installments of the purchase price when past due, waives the prior defaults (Lindsey v. Butte, 96 Cal.App. 465, 274, P. 428, 430, rehearing denied 96 Cal. App. 465, 275 P. 525); and where, after default and repossession, the conditional seller accepts the past due installments, he waives the prior defaults and loses his right to the continued possession of the property, the contract being reinstated and the buyer entitled to immediate possession.

Here, the evidence is sufficient to support the finding that the defendant Bank knowingly accepted and applied the sum of $1,107.40 of the plaintiff Foster's money to satisfy and discharge all the installment payments that had theretofore become due. The defendant Bank thereby lost its right to continue in possession of the trucks and trailer, which should have been released and returned to the plaintiff Foster, for his conditional sales contract with the Bank had been brought up to date and reinstated which entitled Foster to have and use the trucks and trailer.

After the conditional sales contract was reinstated, and subsequent to the time that the plaintiff Foster became entitled

to have the trucks and trailer delivered to him, the defendant Bank disposed of said property to a third party, namely, the Triangle Development Company. This unauthorized disposition by the defendant Bank was an exercise of dominion over the plaintiff's property and a denial of the plaintiff's rights. It was a conversion of the plaintiff's property. It constituted an "unauthorized assumption of dominion over personal property in hostility to the rights of the true owner." Sorensen v. Jacobson, 125 Mont. 148, 158, 232 P.2d 332, 338, 26 A.L.R.2d 1186.

In Labbitt v. Bunston, 84 Mont. 579, 583, 277 P. 805, 806, this court said: "The exercise of dominion over the property of another in exclusion or in defiance of the rights of the owner constitutes conversion of the property. Interstate National Bank v. McCormick, 67 Mont. 80, 214 P. 949, 34 A.L.R. 721."

By commencing this action in conversion, the plaintiff Foster definitely ratified the act of the Triangle Development Company in delivering to the defendant Bank the $1,107.40 for and on plaintiff Foster's behalf. Such contract became fully reinstated as of March 18, 1959, the date payment of all delinquencies was made in behalf of the plaintiff.

The only other question necessary for this court to determine is whether the trial court erred in its instructions on damages.

The trial court instructed the jury on market value of the property involved as follows: "You are instructed that the market value of an article is the value of that article sold in the open market. Market value is determined by the price paid in sales between fair buyers who do not need to buy and fair sellers who do not need to sell." The defendant Bank contends that the above instruction is erroneous and that the jury should have been instructed that market value is the value of an article when sold on the open market "for cash and without trade-ins." We do not agree with defendant's contention.

Never has this court limited the definition of market value as proposed by the defendant Bank in this case. We find that the instruction given by the trial court was precisely in accord with this court's definition of market value and was correct. See James v. Speer, 69 Mont. 100, 220 P. 535; State ex rel. Snidow v. State Board of Equalization, 93 Mont. 19, 17 P.2d 68, 18 P.2d 804; Rider v. Cooney, 94 Mont. 295, 23 P.2d 261; State v. Lee, 103 Mont. 482, 63 P.2d 135.

The value of the property involved was one of the fact questions to be determined by the jury from the evidence before it. We find that there was ample evidence submitted to the jury to sustain their findings.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and DOYLE concur.