DOUGLAS R. TETHEROW AND MARY ANN TETHEROW, PERSONAL REPRESENTATIVE OF THE ESTATE OF DONALD R. TETHEROW, DECEASED, APPELLEES AND CROSS-APPELLANTS, V. E. DEAN WOLFE, DOING BUSINESS AS CENTURY 21, WOLFE & ASSOCIATES, APPELLANT AND CROSS-APPELLEE.

392 N.W.2d 374

Filed August 15, 1986.    No. 84-892.

D. Steven Leininger of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellant.

Alan H. Kirshen, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Douglas R. and Donald R. Tetherow commenced this action in the district court for Cherry County, Nebraska, against the appellant, E. Dean Wolfe, doing business as Century 21, Wolfe & Associates. The cause of action originally owned by Tetherow Bros. & Sons, Inc., a Nebraska corporation, had been assigned to the Tetherows individually as part of the dissolution of the corporation. By the action, Tetherows sought money damages from Wolfe for the alleged negligent action of one of Wolfe's agents in preparing a purchase agreement for the sale of land owned by Tetherow Bros. During the proceedings, Donald Tetherow, one of the brothers, died, and his wife, as personal representative, was substituted as a party plaintiff.

In their petition Tetherows alleged that Tetherow Bros. had retained Wolfe for the purpose of obtaining a buyer of property owned by Tetherow Bros., on condition that the sale be for cash only; that, in fact, Wolfe's agent negligently prepared a contract which was conditioned upon the purchaser's obtaining a loan. Tetherows alleged that it had been specifically inquired of Wolfe's agent whether the contract was not subject to the buyer's obtaining a loan, and were advised by Wolfe's agent that although the form was not the correct form for a cash sale, the contract nevertheless did obligate the purchaser to complete the sale without regard to whether a loan could be obtained and that a correct form could be prepared at a later time. Tetherows further allege that as a result of the statements made to them by Wolfe's agent, they executed the agreement. The petition also alleged that, subsequently, the purchaser refused to complete the purchase on the basis that he could not obtain a loan and therefore demanded return of his downpayment. Tetherows allege that Wolfe's agent was negligent in that he used the wrong form, that he assured the sellers that the form was nevertheless appropriate for the transaction, and that, as a result of the negligence of Wolfe's agent, sellers were injured by reason of the loss of the sale in the amount of $180,906.12, that being the difference between the sale price to E. Max Schmitz of Schmitz,

Inc., and the fair market value of the property at the time the sale should have been completed.

Wolfe filed an answer in which he generally admitted the transaction but denied that he or his agent was in any manner negligent, and denied that the sellers had sustained any damages. He further alleged that "the Plaintiffs failed to mitigate their damages." No facts were alleged to support the conclusion. Furthermore, no affirmative defenses such as contributory negligence were pled.

Following trial to a jury, a verdict was returned in favor of Tetherows and against Wolfe in the amount of $95,809.30. On motion by Wolfe, the district court granted Wolfe credit on the judgment in the amount of $12,431.25, that being one-half the amount of the interest earned on the downpayment in the amount of $116,250 held in escrow from the time that the contract of purchase was signed until Tetherows were ordered by the district court for Hall County, Nebraska, to return the downpayment to the purchaser.

The evidence regarding the transaction is virtually without dispute and is established principally by the testimony of Douglas Tetherow. He testified that in 1978 he and his brother, through their corporation, owned certain ranch land on which they conducted a cow-calf operation. The ranch was divided into eight separate tracts. Because of health reasons, the brothers determined that the corporation should sell the property and entered into a listing contract with Wolfe. When the property did not sell under the listing contract, Tetherows arranged to have the property sold at auction. The sale bill provided that the sale was to be a cash sale. The auction was held on December 11, 1979. Seven of the eight tracts sold. Tracts 1, 2, 4, 5, 6, and 7 were bid in by Schmitz for a total price of $775,000. Tract 3 was sold to another party and is not involved in this lawsuit.

Wolfe's agent proceeded to draw up a contract, using a prepared, printed form. The contract specifically provides that it is subject to Schmitz' obtaining a loan from the federal land bank. Douglas Tetherow testified that when the contract was submitted to the Tetherows for their signatures, he questioned whether the contract reflected the understanding of the parties

and whether the contract provided unconditionally for a cash sale. Wolfe's agent assured Tetherows that while the form was not the correct form, the sale was an unconditional cash sale and that a proper form could be prepared at a later time. The purchaser paid over $116,250 as a downpayment, which was deposited in an interest-bearing account. Under the terms of the agreement, the interest earned was to be divided equally between the purchaser and sellers.

As already indicated, the purchaser later, being unable to obtain a loan from the federal land bank, refused to complete the sale and filed suit for the return of the downpayment. Following a trial, Tetherows were ordered to return to the purchaser his downpayment. In defending the suit, Tetherows incurred legal expenses in the sum of $7,906.12. During the time that the downpayment was on deposit, it earned interest in the amount of $24,862.50. Although the trial court, in the case between the purchaser, Wolfe, and Tetherows, did not order the payment of interest, Tetherows nevertheless paid one-half of the interest to the purchaser in accordance with their previous agreement. Tetherows then commenced this action against Wolfe for damages allegedly caused by reason of Wolfe's agent's failing to prepare a contract requiring the purchaser to proceed unconditionally and for cash.

Wolfe assigns, essentially, the following errors allegedly committed by the district court: (1) That the evidence was insufficient to sustain the verdict; (2) That the district court erred in failing to instruct on the proper measure of damages, in that the district court refused to instruct the jury on Tetherows' obligation to mitigate damages; (3) That the district court erred in permitting the jury to consider, as an element of damages in the suit against Wolfe, the attorney fees incurred by Tetherows in the earlier suit brought by the purchaser; and (4) That the district court erred in failing to credit Wolfe with all of the interest earned on the downpayment, rather than just half of the interest. Tetherows cross-appealed, maintaining that the district court erred in granting Wolfe any credit for the interest earned.

Our review of the record leads us to the conclusion that the assignments of error raised by Wolfe are without merit and that

the verdict, as rendered by the jury, should in all respects be upheld. We further find that the district court erred in granting Wolfe any credit on the interest earned on the downpayment, and must reverse that portion of the judgment.

Turning first to the question of the sufficiency of· the evidence, we believe that the evidence was sufficient to raise a question of fact which had to be submitted to the jury. For that reason the district court did not err in refusing to sustain Wolfe's motion for directed verdict. As we recently have held in *Sierks v. Delk*, 222 Neb. 360, 363, 383 N.W.2d 778, 779 (1986):

> The standard governing a trial judge in assessing a motion for a directed verdict is well established. The judge must resolve every controverted fact in favor of the party against whom the verdict is sought, and must also give that party the benefit of every reasonable inference that can be drawn from the facts in evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law.

This standard of review applies equally to negligence cases. See, *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985); *Krug v. Laughlin*, 208 Neb. 367, 303 N.W.2d 311 (1981). Therefore, unless the evidence viewed most favorably for the party against whom the motion is directed nevertheless results in a finding that the party moving is entitled to judgment as a matter of law, the motion for directed verdict must be overruled.

The evidence in the instant case is without dispute that the sale was to be an unconditional cash sale. The evidence is further without dispute that the contract does not provide for an unconditional cash sale but, rather, clearly provides that the sale is subject to the purchaser's obtaining a loan from the federal land bank. The jury could, as it did, reasonably find that Wolfe's agent, as a realtor, was negligent in using a form which did not reflect everyone's understanding of the sale and was further negligent in assuring Tetherows that, notwithstanding the language of the agreement, an unconditional cash sale was provided for by contract or could be further provided for by later form. A real estate broker owes a duty to his employer, the property owner, to use reasonable

care, skill, and diligence to bring about the desires of the property owner. See, *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975); *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767 (1962). The evidence was sufficient for the jury to find that Wolfe's agent was negligent both in preparing the contract and in representing to Tetherows that the contract nevertheless permitted Tetherows to hold the purchaser to an unconditional cash sale. There was no error, therefore, in overruling the motion for directed verdict or in submitting the case to the jury.

Wolfe further argues that the district court erred in submitting to the jury the measure of damages as being the difference between the contract price and the fair market value on the date performance was required, plus expenses of litigation in defending the earlier lawsuit. Instead, Wolfe argues that the proper measure of damages is the difference between the contract price and the price the tracts were eventually sold for prior to trial. While there does appear to be a split of authority in this regard, see, *Ashurst v. Rosser*, 275 Ala. 163, 153 So. 2d 240 (1963), and *Barboza v. Dellota*, 130 Cal. App. 2d 890, 279 P.2d 219 (1955), the rule in Nebraska seems clear and is as given by the district judge.

This was an action against Wolfe for negligence. By finding for the Tetherows and against Wolfe, the jury determined that but for Wolfe's agent's negligence, the purchaser could not have been released from the contract with Tetherows and would have been liable in damages to Tetherows for breach of contract. What Tetherows lost by reason of Wolfe's agent's negligence was the benefit of the sale which would otherwise have been realized but for the fact that the purchaser was not obligated to complete the purchase. We have long held that in a negligence action a party injured may recover for gains prevented as well as for losses sustained when such damages not only are certain but are the natural and probable result of the wrong suffered. See *Kunkel v. Cohagen*, 151 Neb. 774, 39 N.W.2d 609 (1949). In this case the gains prevented are both certain and the natural and probable result of the wrong suffered. By reason of Wolfe's agent's negligence, Tetherows lost their right to require the purchaser to complete the purchase and therefore were entitled

to recover by way of damages what they would have realized "but for" the negligence of Wolfe's agent. In this case that was loss of the benefit of the bargain or the difference between what the property was worth in the market and what they would have realized if the contract had been carried out. It is that difference which constitutes the "gain" lost by reason of Wolfe's agent's negligence. That lost "gain" is determined as of the time the sale should have been completed. Were we to accept Wolfe's argument, we would be further obligated to hold that if the market price fell subsequent to the date upon which the sale was to occur, further damages should flow. Damages in a case such as this are determined as of the date upon which the event should have occurred and did not occur.

Further, Wolfe's contention that Tetherows were obligated in this case to mitigate their damages is not correct. In the first instance it is not technically correct to talk about mitigation of damages in negligence. Rather, it is the doctrine of avoidable consequences. See 22 Am. Jur. 2d *Damages* § 30 (1965). In the instant case, however, due to the fact that the measure of damages is determined at the moment the gain was lost, there is no doctrine of avoidable consequences applicable. Therefore, evidence regarding avoidance of consequence was not relevant and the district court was correct in not admitting it into evidence.

To the same extent, the district court was correct in not admitting evidence regarding actual and potential income received on the land during the period after the date on which the sale was to close. While it is true that Tetherows did realize some income, it is likewise true that had the sale been completed when required, they would have had the cash from the sale available for investment. What they realized on the land after the date on which the sale was to have closed was not relevant to this litigation nor any part of the damages realized as a result of the purchaser's refusal to close and Tetherows' inability to hold the purchaser liable in damages by reason of Wolfe's agent's negligence.

The district court was, however, correct in permitting the jury to consider legal fees incurred by Tetherows in defending the suit brought by the purchaser. Wolfe argues that attorney

fees are recoverable only when provided for by statute or allowed in the uniform course of procedure. Generally, this is true. See, *Quinn v. Godfather's Investments*, 217 Neb. 441, 348 N.W.2d 893 (1984); *City of Gering v. Smith Co.*, 215 Neb. 174, 337 N.W.2d 747 (1983). That rule applies, however, only where the party to litigation is attempting to recover attorney fees in the very case being litigated. Such is not what is involved herein. In the instant case Tetherows were not attempting to recover attorney fees in their suit against Wolfe but, rather, were attempting to recover attorney fees as damages resulting from expenses incurred in a suit brought by the purchaser, which suit Tetherows ultimately lost because of Wolfe's agent's negligence in preparing the contract. Those attorney fees are recoverable.

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914(2) (1979). See, also, *Brezina v. Hill*, 202 Neb. 773, 277 N.W.2d 224 (1979).

The district court was correct in permitting the jury to consider the attorney fees incurred by Tetherows in defending the earlier action as part of their damages in the instant action.

That leaves us with only the issue of the interest. As earlier indicated, the downpayment, while in escrow, earned interest in the amount of $24,862.50. The district court allowed Wolfe a credit of $12,431.25 because, apparently, Tetherows paid to the purchaser one-half of the interest earned, as agreed to between the parties, and retained one-half of the interest. We believe that Wolfe was not entitled to credit for any of the interest. The dividing of the interest on the downpayment which ultimately was ordered repaid to the purchaser was a matter of an agreement between Tetherows and the purchaser. Interest earned on the downpayment was a matter of contract between Tetherows and the purchaser and wholly outside of the damages suffered by Tetherows as a result of the negligence of Wolfe's agent. To allow Wolfe credit would be in violation of the "collateral source rule." The essence of the rule is set out in 22

Am. Jur. 2d, *supra* § 206 at 286-87, and provides:

> In tort cases, the plaintiff may receive benefits from a third party who is in no way connected with the defendant, and receipt of these benefits from the source collateral to the defendant has the effect of lessening the financial losses which the plaintiff would otherwise have suffered. Thus, if the basic goal of tort law is only that of compensating plaintiff for his losses, evidence of these benefits should be admitted to reduce the total damages assessed against the defendant. At the same time, however, reducing recovery by the amount of the benefits received by the plaintiff would be, according to most courts, granting a "windfall" to the defendant by allowing him a credit for the reasonable value of those benefits. Such a credit would result in the benefits being effectively directed to the tortfeasor and from the intended party—the injured plaintiff. In balancing these conflicting principles of tort law, courts generally have held that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. This is known as the "collateral source rule."

See, also, *Huenink v. Collins*, 181 Neb. 195, 147 N.W.2d 508 (1966).

The trial court should not have given Wolfe any credit for the interest, and, to that extent, the judgment entered by the district court should be modified and the award of the jury in the amount of $95,809.30 should be reinstated. The judgment of the district court, therefore, is in part affirmed and in part reversed and remanded with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., concurs in the result.