EDITH OCHS, CONSERVATOR FOR THE ESTATE OF JOSEPHINE CASTKA, A PROTECTED PERSON, APPELLANT, V. LEONARD MAKOUSKY, APPELLEE.

547 N.W.2d 136

Filed May 3, 1996. No. S-94-540.

Robert D. Westadt, of Otradovsky, Bieber & Westadt, for appellant.

Denise E. Frost, of Domina & Copple, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

The plaintiff–appellant, Edith Ochs, conservator for the estate of Josephine Castka, a protected person, alleges that the defendant–appellee, Leonard Makousky, "unlawfully took and converted" to his own use and benefit $55,000 of Josephine Castka's funds. Pursuant to verdict, the district court entered judgment in favor of Makousky. Ochs appealed to the Nebraska Court of Appeals, and we, on our own motion, removed the matter to this court in order to regulate the caseloads of the two courts.

In 1967, Josephine Castka, who was born on April 16, 1901, and her sister Carrie Castka sold their farm to Makousky but continued to live in the house located thereon rent free. In 1982, Josephine Castka moved into an apartment and in 1991 into a nursing home. At some point she became mentally incompetent, and Ochs was appointed her conservator on March 2, 1993. This suit was filed March 9, 1993.

Makousky and his wife took care of the Castka sisters while they lived on the farm. Makousky's wife did their laundry, cleaned their house, and took them shopping and to visit

doctors. Makousky and his wife continued to care for Josephine Castka when she moved into the apartment.

While living in the apartment, Josephine Castka began sharing a joint checking account with Makousky. Although she was the sole source of the money, she never drew a check on the account. Makousky used the account to pay her bills.

On September 5, 1991, Makousky wrote a check from the joint checking account to himself in the amount of $55,000. Over Ochs' objection, he testified that he did so because Josephine Castka told him before she moved into the nursing home that she wanted all of her bills paid, including any money owed him for rent and payment for all services provided and chores performed by him over the years. After Makousky's withdrawal, approximately $7,000 remained in the account.

Ochs asserts the district court erred in two respects, in permitting Makousky to testify as described earlier and in not directing a verdict in her favor.

With regard to the first assignment of error, Ochs urges that the questioned testimony constituted inadmissible hearsay.

Neb. Evid. R. 801(4)(b), Neb. Rev. Stat. § 27–801(4)(b) (Reissue 1995), provides, in part, that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . his own statement, in either his individual or a representative capacity . . . ." In a suit instituted by the conservator of the estate of a protected person, it is the protected person who is the real party in interest. *Schmidt v. Schmidt*, 228 Neb. 758, 424 N.W.2d 339 (1988). Thus, § 27–801(4)(b) excludes statements made by a protected person from the definition of hearsay. The district court therefore properly received Makousky's testimony as to what Josephine Castka told him with regard to paying her bills.

It is true that at trial, Makousky argued not that the questioned testimony was not hearsay, but, rather, that the testimony was admissible under various exceptions to the rule making hearsay inadmissible. However, even if we were to assume that in making its ruling the district court relied on the erroneous reasoning Makousky advanced, a correct decision will not be reversed merely because it was reached for the wrong reasons. *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532

N.W.2d 284 (1995); *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994).

That brings us to Ochs' claim that the district court erred in overruling her motion for a directed verdict.

In reviewing a trial court's ruling on such a motion, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995); *Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995). In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Id.*

Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). Ochs' having chosen the remedy of tortious conversion and the issues having been thus framed, the fact in controversy is whether Makousky wrongfully asserted dominion over the funds in the joint account. Makousky presented evidence that Josephine Castka intended that he pay himself from this account for past rent and services. This evidence controverts a claim of tortious conversion. The question thus became one of credibility for the jury to resolve. Accordingly, it would have been prejudicially erroneous to direct a verdict in Ochs' favor.

There being no merit to either of Ochs' assignments of error, the judgment of the district court must be affirmed.

AFFIRMED.