JOYCE ZIMMERMAN, APPELLANT, V.
FIRSTIER BANK, N.A., ET AL., APPELLEES.
585 N.W. 2d 445

Filed October 23, 1998.   No. S-97-672.

Mark J. Curley, of Brown & Brown, P.C., for appellant.

Kermit A. Brashear, Scott E. Daniel, and Anna M. Bednar, of Brashear & Ginn, for appellee FirsTier Bank.

Donald J. Pavelka, Jr., of Hansen, Engles & Locher, P.C., for appellee Norwest Bank Nebraska.

Julie Noonan, of Kivett & Knickrehm, for appellee Commercial Federal Bank.

WRIGHT, GERRARD, STEPHAN, and MCCORMACK, JJ., and HANNON, JUDGE.

STEPHAN, J.

In this action, Joyce Zimmerman seeks recovery of attorney fees and other expenses which she allegedly incurred in a probate proceeding involving the estate of Thelma Griess, her deceased aunt. Zimmerman alleged in her operative petition that upon Griess' death, the appellee banks tortiously converted funds on deposit in three joint accounts by transferring them to

an account at FirsTier Bank, N.A., as the personal representative of Griess' estate, in disregard of Zimmerman's rights of survivorship, necessitating her successful assertion of those rights in the probate proceeding. Zimmerman appeals from an order of the district court for Douglas County denying her motion for partial summary judgment on the issue of liability and entering summary judgment in favor of the banks. We reverse, and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

At the time of her death, Griess had several joint bank accounts and certificates of deposit. These included a joint checking account at FirsTier in the names of "Thelma D. Griess and Joyce Zimmerman"; a checking account at Norwest Bank, N.A., titled in the names of "Thelma D. Griess or Joyce A. Zimmerman" as "Joint Depositors with Right of Survivorship"; and a savings account certificate at Commercial Federal Bank titled in the names of "Thelma D. Griess, TR, and Joyce Zimmerman, BENE."

On July 8, 1993, a will executed by Griess on June 1, 1989, was admitted to probate in the county court for Douglas County, and FirstTier was appointed personal representative of Griess' estate. Mary Jewell, an attorney employed by FirsTier as a personal trust administrator, was assigned to the Griess estate. At Jewell's request, the funds which were on deposit in the FirsTier, Norwest, and Commercial Federal accounts were transferred to an account maintained by FirsTier for the Griess estate. FirsTier, as the personal representative, filed an amended inventory on January 24, 1994, which listed the proceeds of these three accounts, having a combined value of $141,615.72, as assets owned by the decedent at the time of her death. A schedule of distribution filed on the same day stated that these proceeds were to be distributed to FirsTier as trustee of a testamentary trust, of which two minor grandsons of the deceased, Brian Griess and David Griess, were designated beneficiaries. Although Griess' will did not name Zimmerman as a devisee, she was scheduled to receive $13,547.05 from the estate, representing the proceeds of another FirsTier account on which she and Griess were shown as joint owners. On March 4, 1994, the

county court entered an order stating that the authority of the personal representative would terminate and the personal representative would be discharged from all claims or demands from interested persons when all receipts of distribution were filed with the court. All distributees except Zimmerman filed receipts on that date.

At the time of Griess' death, Zimmerman was aware of the fact that she had executed signature cards for the FirsTier and Norwest accounts but was unaware of the legal effect of her signatures. At that time, she had no knowledge of the Commercial Federal account. Zimmerman consulted an attorney, who wrote a letter to Jewell, asserting that the FirsTier and Norwest accounts were held in joint tenancy and therefore became the property of Zimmerman upon the death of Griess and should be returned to her. FirsTier did not comply with this request because it claimed uncertainty regarding Griess' intent.

Zimmerman then filed an objection to the schedule of distribution, contending that the FirsTier and Norwest accounts were payable to her upon Griess' death and therefore should not be included among the assets scheduled for distribution to the testamentary trust. When she subsequently learned of the Commercial Federal account during discovery proceedings, Zimmerman filed an amended objection, asserting that this account was also payable to her upon Griess' death and therefore was not an asset of the estate. The county court appointed a guardian ad litem for the trust beneficiaries and thereafter conducted a hearing on Zimmerman's objections as amended. Jewell appeared at the hearing as a representative of FirsTier in its capacity as personal representative of the Griess estate. Norwest and Commercial Federal were not named parties and did not enter appearances. Jewell testified that in her opinion, the accounts and certificate of deposit in question were joint accounts in the names of Thelma D. Griess and Joyce Zimmerman. Jewell further testified that based upon her understanding of Griess' "intent" and after consulting counsel, she elected to maintain the disputed accounts as assets of the estate for eventual distribution to the testamentary trust. It was stipulated that all funds in the accounts were contributed solely by Griess.

Attorney Diane B. Metz testified that she represented Griess at the time of the execution of the 1989 will. Metz stated that she was aware that Griess had certain accounts titled jointly with Zimmerman and that in keeping with her customary practice, she explained to Griess that jointly held assets would not pass pursuant to the terms of a will but would become the property of the surviving joint owner upon her death. Metz also advised Griess that the value of her estate must be at least $150,000 in order to utilize a corporate fiduciary. Metz assisted Griess in determining that the value of her estate exceeded that amount and stated that in making this computation, they included the value of the joint accounts which Griess stated that she "owned."

After Griess' death, Metz was retained by Jewell to serve as the attorney for FirsTier in its capacity as personal representative of the Griess estate. Metz prepared the inventory for the estate and attempted to carry out the distribution in accordance with instructions she received from FirsTier. Metz admitted that she never personally examined documents pertaining to the accounts listed on the inventory.

The county court found that there was "no doubt" the three accounts in question were joint accounts titled in the names of Griess and Zimmerman. The court further found that whether analyzed under the statutory provisions applicable to multiple party accounts in effect at the time of Griess' death, Neb. Rev. Stat. §§ 30-2701 to 30-2713 (Reissue 1989), or the laws which replaced them effective September 9, 1993, Neb. Rev. Stat. §§ 30-2716 to 30-2733 (Reissue 1995), the funds in the three accounts belonged to Zimmerman upon the death of Griess by operation of law. The court therefore granted Zimmerman's objections to the proposed distribution and directed FirsTier to pay the proceeds of the three joint accounts to Zimmerman, together with interest accrued from the date of Griess' death, less the fee of guardian ad litem in the amount of $3,831.50, which was to be paid directly to him. The record does not reflect an appeal from this order, and it is undisputed that FirsTier made the payments ordered by the county court.

In the present case, Zimmerman alleged that the banks wrongfully converted the proceeds of the three joint accounts

by transferring them to the estate account instead of to her upon Griess' death and that FirsTier, as the personal representative, refused to return the funds upon her request. She further alleged that because of these actions, she was required to assert her objections to the proposed distribution of the account proceeds and, in so doing, incurred attorney fees in the amount of $48,508.77, in addition to the fee of the guardian ad litem. Zimmerman claimed these amounts as damages and alleged that each bank should be responsible for its pro rata share. In separate answers, the banks denied converting the funds and asserted several affirmative defenses including laches, estoppel, and the failure of Zimmerman to make demand upon them before filing her objections in the probate proceeding. In addition, each bank alleged that the amount of attorney fees claimed by Zimmerman was excessive.

The banks filed motions for summary judgment, and Zimmerman filed a cross-motion for partial summary judgment on the issue of liability. In granting the banks' motions and denying that of Zimmerman, the district court held that demand for return of the funds was required before an action for conversion would lie, relying upon *Hansen v. Village of Ralston*, 145 Neb. 838, 18 N.W.2d 213 (1945), and that Zimmerman's claim was barred, as a matter of law, because she failed to make sufficient demand upon the banks before bringing this action. The district court specifically found that Zimmerman's request that FirsTier return the joint account proceeds which it held as personal representative of the Griess estate was insufficient to satisfy the "demand requirement" of Zimmerman's claim of tortious conversion because "FirsTier Bank, as Personal Representative, is a separate entity from . . . FirsTier Bank's depository bank where the joint account was held." Zimmerman perfected a timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate our caseload and that of the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Zimmerman contends that the district court erred in (1) determining that FirsTier, when acting as the personal representative of the estate of Griess, was a separate legal entity from FirsTier

as a depository bank, (2) determining that the demand for the return of the funds from the joint accounts made upon FirsTier failed to satisfy the demand requirement for a conversion action, (3) failing to find that any demand upon the banks to return the money would have been futile, and (4) overruling Zimmerman's motion for summary judgment on the issue of liability.

## STANDARD OF REVIEW

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998); *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Pettit v. Paxton, ante* p. 279, 583 N.W.2d 604 (1998); *Vanice v. Oehm, ante* p. 166, 582 N.W.2d 615 (1998).

## ANALYSIS

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pettit, supra*; *Kozicki v. Dragon, ante* p. 248, 583 N.W.2d 336 (1998); *Strom v. City of Oakland, ante* p. 210, 583 N.W.2d 311 (1998). Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just. *Vowers & Sons, Inc., supra*; *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Elliott v. First Security Bank*, 249 Neb. 597, 544 N.W.2d 823 (1996).

Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights. *Ochs v. Makousky*, 249 Neb. 960, 547 N.W.2d 136 (1996); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 371 N.W.2d 102 (1985). The plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion. *PWA Farms, supra*; *Prososki v. Commercial Nat. Bank*, 219 Neb. 607, 365 N.W.2d 427 (1985). In other words, "the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." *Terra Western Corp. v. Berry and Co.*, 207 Neb. 28, 31, 295 N.W.2d 693, 696 (1980).

On the date of Griess' death, multiple-party bank accounts were governed by §§ 30-2701 to 30-2713 (Reissue 1989). Section 30-2701(1) defined "account" to include checking accounts, savings accounts, and certificates of deposit. Section 30-2701(4) defined "joint account" as "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." Section 30-2704(a) stated that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." Finally, § 30-2704(e) provided that a right of survivorship arising from the express terms of an account "cannot be changed by will." The county court determined that under these statutory provisions, the funds in the three joint accounts at issue became the property of Zimmerman upon the death of Griess. Thus, as a matter of law, Zimmerman had an immediate right to possession of the account balances at the time of the alleged conversion.

In *Ochs*, which involved an alleged conversion of funds from a bank account, we wrote that "the fact in controversy is whether [the defendant] wrongfully asserted dominion over the funds in the joint account." 249 Neb. at 963, 547 N.W.2d at 139. Here, there is uncontroverted evidence that each bank transferred the entire balance of the joint accounts in question to the estate account at the request of FirsTier, as the personal repre-

sentative, with knowledge that Griess had died and that their own records reflected Zimmerman's interest as the surviving joint owner. In addition, despite Zimmerman's specific request that the funds be returned to her, FirsTier retained them in the estate account until ordered by the county court to pay them to Zimmerman. These undisputed facts establish, as a matter of law, that the appellees wrongfully exercised acts of dominion over the funds deposited in the joint accounts in a manner inconsistent with Zimmerman's rights as the surviving joint owner.

We must therefore address the issue of whether the district court erred in finding that Zimmerman's action for conversion was barred by her failure to make sufficient demand upon the banks before instituting this action. In determining that such demand was a prerequisite to an action for tortious conversion, the district court relied upon *Hansen v. Village of Ralston*, 145 Neb. 838, 842, 18 N.W.2d 213, 215 (1945), in which we stated:

> Where the defendant has come into the possession of property lawfully or without fault, it is generally necessary to make demand of possession of him before suit will lie since there is no conversion until there has been a refusal to surrender such possession. . . . However, a demand and refusal are not essential when it is clear that a demand would have been useless or unavailing.

(Citations omitted.) In *Hansen*, the Village of Ralston had been in possession of certain park equipment for a number of years. The records of the village were poorly kept and did not verify the ownership of the equipment, although there was some evidence that at least some of it was owned by the village. In response to Hansen's assertion of ownership and demand for possession, the village stated that it would deliver the equipment to him if he could establish his title. Citing the rule quoted above, we observed that demand had been made on the village before the action for conversion was brought. However, we reversed a directed verdict for Hansen, finding that a jury question existed as to whether the qualified refusal of the village to deliver the equipment to Hansen in response to the claim of ownership communicated by his demand and its continued possession of the equipment constituted a conversion.

The present case is distinguishable from *Hansen* in that the wrongful act of dominion alleged to constitute the conversion consists of a transfer rather than a retention of property by the tort-feasor. We have not had occasion to hold whether demand and refusal is a prerequisite to an action for conversion under these circumstances. In general, courts have held that demand and refusal may constitute evidence necessary to prove conversion under some circumstances, but need not be shown where there is other evidence of an act of dominion or control over property inconsistent with the rights of the owner. See, *Colorado Corp. v. Whitworth*, 144 Colo. 541, 357 P.2d 626 (1960); 89 C.J.S. *Trover & Conversion* § 55 (1955); 18 Am. Jur. 2d *Conversion* § 84 (1985).

In *Hansen*, the retention of property by the village did not become an act of dominion inconsistent with Hansen's rights until the village was placed on notice of those rights by Hansen's demand for delivery of the property. However, in circumstances where a party in possession of property has notice of another's claim of ownership and transfers the property to a third party, courts have held that such transfer is itself an act of dominion, inconsistent with the rights of the owner, sufficient to establish actionable conversion without the necessity of showing prior demand and refusal. See, e.g., *Shaw's D. B. & L., Inc. v. Fletcher*, 580 S.W.2d 91 (Tex. Civ. App. 1979); *Satterfield v. Sunny Day Resources, Inc.*, 581 P.2d 1386 (Wyo. 1978); *Atlas Hotel Supply v. Baney*, 273 Or. 731, 543 P.2d 289 (1975); *Foster v. First National Bank of Missoula*, 139 Mont. 396, 365 P.2d 938 (1961); *Colorado Corp. v. Whitworth, supra*.

In the present case, the banks' own records reflect that Zimmerman was a joint owner of the accounts in question at the time of Griess' death. Despite this and contrary to their own internal procedures applicable to the handling of joint accounts upon the death of one of the owners, each bank, at the request of FirsTier as the personal representative, transferred all funds in those accounts to Griess' estate account. These uncontroverted facts are sufficient to establish distinct acts of dominion inconsistent with Zimmerman's ownership rights, and we therefore hold as a matter of law that under the facts of this case, evidence of demand and refusal was not necessary to prove con-

version under these circumstances. Thus, the district court erred in granting the banks' motions for summary judgment on the ground that Zimmerman had not made sufficient demands prior to bringing this action.

Assuming without deciding that FirsTier's actions as personal representative of the Griess estate should be analyzed separately from its actions as a depository bank, we note that the letter which it received from Zimmerman's attorney constituted an unequivocal demand for the return of the joint account proceeds then in its possession. FirsTier argues that in its capacity as personal representative, it was justified in retaining the proceeds of the joint accounts in the estate account under the rule that a " '*bona fide* reasonable detention of property by one who has assumed some duty respecting it, for the purpose of ascertaining its true ownership, or of determining the right of the demandant to receive it, will not sustain an action for conversion.' " *Hansen v. Village of Ralston*, 145 Neb. 838, 842-43, 18 N.W.2d 213, 215 (1945), quoting *Farming Corporation v. Bridgeport Bank*, 113 Neb. 323, 202 N.W. 911 (1925). However, the record reflects that FirsTier took no action to ascertain the true ownership of the joint account proceeds. To the contrary, it steadfastly took the position that the funds were assets of the estate and filed a schedule of distribution reflecting its intent to distribute the funds to the testamentary trust. In its order granting Zimmerman's objections to the distribution proposed by the personal representative, the county court specifically found that its adjudication of entitlement to the proceeds of the joint accounts was complicated by the fact that "the estate never admitted that these were in fact joint accounts." We find this position perplexing, given the documentation of the joint accounts and the testimony of Jewell and Metz, both attorneys employed or retained by FirsTier, that the accounts at issue were joint accounts. Clearly, the record does not reflect a bona fide reasonable detention of the funds by FirsTier for the purpose of ascertaining ownership.

The banks argue that however characterized, their actions could not have been the proximate cause of the damages claimed by Zimmerman. In general, attorney fees and expenses may be recovered only where provided for by statute or when a

recognized and accepted uniform course of procedure has been to allow recovery of an attorney fee. *Schirber v. State*, 254 Neb. 1002, 581 N.W.2d 873 (1998); *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997); *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997). The general rule applies, however, "only where the party to litigation is attempting to recover attorney fees in the very case being litigated." *Tetherow v. Wolfe*, 223 Neb. 631, 638, 392 N.W.2d 374, 379 (1986). In *Tetherow*, we upheld a district court's decision to permit the jury to consider the attorney fees incurred by a party in defending an earlier legal action as part of their damages in a subsequent proceeding, based upon the principle stated in Restatement (Second) of Torts § 914(2) (1979):

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

*Tetherow*, 223 Neb. at 638, 392 N.W.2d at 379.

The banks argue that *Tetherow* is inapplicable for several reasons. FirsTier contends that the rule stated in that case has no application where the parties to the prior and subsequent actions are the same, relying upon cases from other jurisdictions as well as *In re Estate of Snover*, 4 Neb. App. 533, 546 N.W.2d 341 (1996). In *In re Estate of Snover*, two heirs of the estate were successful in their action to remove the personal representative on the ground that he breached his fiduciary duties. The heirs were appointed successor copersonal representatives and brought an action against the former personal representative to surcharge him for damages to the estate caused by his breach of fiduciary duty. The damages claimed in the second action included attorney fees which the heirs incurred in the first action. The Court of Appeals held that such fees were not recoverable as damages in the second action under *Tetherow*, since the subsequent action involved the same parties as the prior one. In the instant case, FirsTier argues that the adversarial probate proceeding in the county court was solely between it

and Zimmerman and thus, that the same reasoning should apply. We disagree.

In the probate proceeding, Zimmerman asserted a claim to property which FirsTier held in its capacity solely as personal representative of the Griess estate. See Neb. Rev. Stat. § 30-2472 (Reissue 1995). The sole issue raised by Zimmerman's objections to the proposed distribution was whether the joint account proceeds belonged to her or to the estate. Although Jewell appeared at the evidentiary hearing as the FirsTier employee responsible for carrying out its duties as personal representative of the estate and testified as a witness called by Zimmerman, FirsTier did not offer evidence or examine witnesses. In the present case, Zimmerman has not sued FirsTier in its representative capacity, but, rather, has asserted a claim for damages which, if meritorious, could be satisfied from FirsTier's corporate assets.

Norwest and Commercial Federal do not claim to have been parties to the probate proceedings, but they nevertheless argue that the damages claimed in this action were not proximately caused by their transfers of funds from the joint accounts to the estate account. A "proximate cause" is that which, in a natural and continuous sequence, without any efficient intervening cause, produces the injury, and without which the injury would not have occurred. *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Steuben v. City of Lincoln*, 249 Neb. 270, 543 N.W.2d 161 (1996). In other words, there must be " 'some reasonable connection' " between the wrongful act of the defendant and the damage suffered by the plaintiff. *Sacco v. Carothers*, 253 Neb. 9, 17, 567 N.W.2d 299, 305 (1997). Here, the banks' transfers of funds from the joint accounts to the estate account placed the funds under the control of FirsTier as the personal representative, which proposed to distribute them to the testamentary trust. When Zimmerman became aware of this, she filed objections in the probate proceeding in order to protect her interests as the surviving joint owner. Had she not done so, Zimmerman would have incurred the risk of a conclusive determination that the funds in question were the property of the estate and therefore passed by the will to the testamentary trust. Thus, the record reflects a natural and continuous causal

sequence from the banks' improper transfers of Zimmerman's property to her actions in securing their recovery through litigation in the probate proceeding.

Alternatively, Norwest and Commercial Federal contend that litigation over the ownership of the funds in the three joint accounts would have occurred regardless of whether they had paid them to Zimmerman, relying upon the following statement in an affidavit submitted by Jewell:

> That had [FirsTier], Commercial Federal Bank or Norwest Bank, Nebraska, N.A. transferred the joint account proceeds to Ms. Zimmerman, the Personal Representative, in fulfilling its fiduciary obligations to the Estate and beneficiaries, would have commenced an action against Joyce A. Zimmerman for recovery of the Account Proceeds so that the proper ownership and/or beneficiary of such proceeds could be determined and established.

Although not specifically articulated in their briefs, Norwest and Commercial Federal apparently contend that since Zimmerman would have incurred attorney fees and expenses in defending a suit by FirsTier as the personal representative, if they had paid the joint account proceeds to her, the fees and expenses which she incurred in asserting her rights in the probate proceeding were not caused by the wrongful payment. Indeed, some courts have held that the principle stated in Restatement (Second) of Torts § 914(2) (1979), which we adopted in *Tetherow v. Wolfe*, 223 Neb. 631, 392 N.W.2d 374 (1986), does not apply where the claimed attorney fees were incurred in prior litigation which would have occurred regardless of the defendant's wrongful act. See, e.g., *Gavcus v. Potts*, 808 F.2d 596 (7th Cir. 1986); *Smith v. Chatfield*, 797 S.W.2d 508 (Mo. App. 1990); *First Md. Fin. Serv. v. District-Realty*, 548 A.2d 787 (D.C. App. 1988).

We do not regard the statement in Jewell's affidavit as establishing the inevitability of litigation so as to bar Zimmerman's claim. The pertinent question is not whether FirsTier would have sued Zimmerman if the proceeds of the joint accounts had been paid to her, but, rather, whether there would have been any factual and legal basis for such an action, since a party forced to defend a frivolous action may recover her attorney fees pursuant

to Neb. Rev. Stat. § 25-824 (Reissue 1995). In this context, a frivolous action is one in which a litigant asserts a legal position wholly without merit, that is, without rational argument based on law and evidence to support the litigant's position. *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998); *Surratt v. Watts Trucking*, 249 Neb. 35, 541 N.W.2d 41 (1995).

As we have noted, Jewell admitted in her trial testimony that all three of the accounts in question were joint accounts listing Griess and Zimmerman as owners, and the county court found that there was "no doubt" as to this fact. The court further determined as a matter of law that because the Norwest and Commercial Federal accounts contained express rights of survivorship, the funds in those accounts "belonged to Joyce Zimmerman upon the death of Thelma D. Griess and even her Will could not change the outcome." See § 30-2704(a) and (e). Although the FirsTier account did not contain express terms of survivorship, the court found that Zimmerman executed the signature cards for the account in 1983 at the specific request of Griess, who was competent and able to handle her own affairs. The court further found that at the time Griess executed the will, her attorney advised her that the joint accounts would not pass to her estate under the will and that without the funds then on deposit in the FirsTier account, her estate would not be of a sufficient size "to designate a bank as personal representative . . . ." The county court concluded:

> But she knew this in June of 1989 and did nothing to change the situation. One can only assume that this was intentional because *there is no evidence that Ms. Griess did not completely understand everything that was occurring*. She handled most of her own affairs and there is nothing to indicate she did not do a capable job.

(Emphasis supplied.)

Based upon these findings, the county court found no clear and convincing evidence that Griess intended to create anything other than a joint account with rights of survivorship. Our review of the record discloses no legal or evidentiary basis upon which FirsTier could have challenged Zimmerman's ownership of the joint account proceeds. Thus, the record in this case

affords no basis on which a finder of fact could conclude that good faith litigation would have been inevitable had the banks honored Zimmerman's right to the proceeds of the joint accounts instead of wrongfully transferring such proceeds to the estate account at FirsTier. To the contrary, the record contains uncontroverted evidence that Zimmerman was required to take affirmative action to protect her interests as a proximate result of the tortious conversion of the joint account proceeds and that in so doing, she incurred at least some damages for which she is entitled to seek recovery. We therefore conclude that the district court erred in denying Zimmerman's motion for partial summary judgment on the issue of liability, and we reverse, and remand for further proceedings with respect to damages.

We observe that all three banks have alleged in their answers that the attorney fees claimed by Zimmerman are excessive. Two of the banks allege that such fees contravene Canon 2, DR 2-106, of the Code of Professional Responsibility, which prohibits clearly excessive fees. In response to questioning during oral argument, Zimmerman's counsel stated that the claimed fee of $48,508.77 was computed on the basis of a contingent fee agreement. On remand, determination of the amount of attorney fees recoverable as damages should be governed by the same standard of reasonableness which is applied when recovery of an attorney fee is authorized by statute. In determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997); *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997). There is no presumption of reasonableness placed on the amount offered by the party requesting fees. *Koehler, supra.* An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and inconsistent with the character of the profession. *State ex rel. FirsTier Bank*

*v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995). A court has authority to monitor and determine the reasonableness of contingent fee contracts under the court's inherent power to regulate the bar. *Mullen, supra*; *Kirby v. Liska*, 214 Neb. 356, 334 N.W.2d 179 (1983).

For the foregoing reasons, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, C.J., and CONNOLLY, J., not participating.